

**JOHN G. POWERS**
(315) 565-4547
*jpowers@hancocklaw.com*

February 20, 2024

**VIA ELECTRONIC FILING**

Hon. Brenda K. Sannes, Chief U.S. District Judge
James M. Hanley Federal Building
100 S. Clinton St.
Syracuse, New York 13261

      Re.    *The Research Foundation for the State Univ. of N.Y. v. Inpria Corp.*, Civil Action
             No.: 1:24-CV-120 (BKS/ML)

Dear Chief Judge Sannes,

My office, together with Paul Hastings LLP, represents Defendants Inpria Corp. and JSR Corp. ("Defendants") in the above-referenced matter.  In accordance with Your Honor's instructions during the February 9, 2024 telephone conference (setting a briefing schedule on Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. No. 24)) and pursuant to Local Rule 5.3, we respectfully request that the Court seal several portions of the transcripts of the February 7 and 9 telephone conferences.[1]  Redacted copies are attached as Exhibits A and B.  We will provide unredacted copies of these transcripts to the Court for *in camera* review, with the narrowly tailored portions we seek to remain under seal highlighted in yellow.  We provided our proposed redactions to Plaintiff's counsel yesterday morning and they remain opposed to this sealing request.

We also write to advise the Court that after having an opportunity to confer with our clients, Defendants do not seek to have the two conditions of the Court's briefing schedule sealed.  Those conditions, as stated during the February 9 telephone conference are, (1) "that the IP is to remain subject to the jurisdiction of U.S. courts," and (2) "the assets of Inpria will not be transferred to JIC until the tender offer is closed."  (Ex. B, Feb. 9, 2023 Tr. at 17-18).

The information redacted from Exhibits A and B, however, should remain sealed because it contains non-public details about the planned $6.4 billion tender offer by non-party Japan Investment Corporation ("JIC"), a Japanese government-affiliated investment fund, to purchase the shares of JSR, through its wholly owned subsidiaries.  (*See* Ex. C, Declaration of Andrew Cohen dated Feb. 20, 2024 ("Cohen Decl.") ¶¶ 2-4).  The tender offer will be conducted in accordance with the "information disclosure standards prescribed in the laws of Japan."  (*Id.*, Ex. 1 at 1 (JIC June 26, 2023 News Release)).  The details that Defendants seek sealed have not been disclosed to the investing public in Japan or elsewhere.  (*Id.* ¶ 4).  Disclosure of these

---

[1]      JSR reserves its right to contest personal jurisdiction and does not waive that right, impliedly or otherwise.

details could improperly affect the market, including by disrupting the timing of the transaction, threatening its consummation, and impacting its price. (*Id.* ¶ 5.) This would be detrimental to JSR shareholders in the United States and around the world. (*Id.*).[2] It is apparent that the global market is keenly interested in all details of this future transaction, as demonstrated by the fact that a London-based observer affiliated with the hedge fund HBK Capital joined the February 7 telephone conference. (*See* Ex. A., Feb. 7, 2024 Tr. at 4:6-13).

Any disclosures regarding the transaction beyond what non-party JIC has disclosed to date would potentially interfere with the plans of the Japanese government. We ask that the Court please consider the strong relations between the United States and Japan, including with respect to the development of next-generation semiconductors—the technology at issue in this case—as recently confirmed in a joint statement on economic policy. *See Joint Statement of the Japan-U.S. Economic Policy Consultative Committee*, November 14, 2023, available at https://www.commerce.gov/news/press-releases/2023/11/joint-statement-japan-us-economic-policy-consultative-committee ("We [the United States and Japan] intend to continue to consult closely on global semiconductor supply and demand trends to strengthen supply chains among like-minded partners and . . . . to build upon productive discussions under the Joint Task Force on the development of next-generation semiconductors to enable new designs for chips used in emerging industrial applications."). Thus, our sealing request implicates issues of international comity, the purpose of which is to "afford consideration and respect to the laws and interests of foreign sovereign nations." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, No. 01-cv-9882 (DLC), 2005 WL 2082846, at *4 (S.D.N.Y. Aug. 30, 2005) (internal quotation omitted); *European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 474 (E.D.N.Y. 2001) ("comity in the international context (in conjunction with separation of powers principles) requires deference to international and executive branch processes").

Further, it is apparent that disrupting the tender offer is Plaintiff's goal in opposing this sealing request and attempting to rush the sealing process. Plaintiff revealed these intentions when it stated at the last telephone conference that, while its pending motion does not seek to enjoin the tender offer, it believes the relief it requested would stop the transaction. (Ex. B, Feb. 9, 2024 Tr. at 4) (Plaintiff's counsel: "we think that the requested preliminary relief would stop the commencement of the tender offer"). Last Friday, November 16, 2024, Plaintiff was more explicit: Its counsel complained over email that Defendants' sealing request "precluded" them "from sharing information with our clients, other interested persons, or the public." (Ex. D, Feb. 2-16, 2024 emails). When deciding requests to seal, courts should assess "how the person

---

[2]    It is well recognized in the field of mergers and acquisitions that communications regarding potential court involvement or judicial orders affecting a business subject to a public tender offer have the potential to adversely affect a transaction in numerous negative ways. Even the publicizing of innocuous non-public information can "presage a swing in the stock price." Andrew Verstein, *Insider Tainting: Strategic Tipping Of Material Nonpublic Information*, Northwestern University Law Review, Vol. 112, No. 4 (2018). Information that there is even the potential for some future court restraint on the participants to a transaction has the potential to greatly injure shareholders. *See id.* at 728-29 (even anonymous communications about a transaction can taint or even prevent that transaction, "robbing shareholders of valuable payments" and serving those parties trying to prevent the transaction); *see also id.* at 748-49 ("federal investigators effectively destroyed the $2 billion Diamond Partners hedge fund merely by publicizing the fact that an investigation had been initiated. Investors fled the fund rapidly in the wake of the investigation").

seeking access intends to use the information." *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 1:17-cv-598 (BKS/CFH), 2021 WL 776701, at *2 (N.D.N.Y. Mar. 1, 2021) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). Here, Plaintiff has signaled its intent to use non-public information about the tender offer to exert pressure on Defendants, presumably in the hopes of securing a settlement of its claims prior to any decision on the merits.

Second Circuit precedent establishes that the presumption of public access—whether it be common law or First Amendment access—exists on a continuum. *See Brown v. Maxwell*, 929 F.3d 41, 47-49 (2d Cir. 2019); *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). The "weight" of that presumption is governed by "'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Brown*, 929 F.3d at 49 (quoting *Amodeo*, 71 F.3d at 1049). Accordingly, the grounds for sealing a document "need not be as compelling" when they relate to matters "ancillary to the court's role in adjudicating a case." *Id*. at 50.

Defendants seek to have sealed narrow portions of transcripts of two telephone conferences to decide a briefing schedule. (*See* Ex. A, Feb. 7, 2024 Tr. at 10:11-12 (The Court: "this was originally set as just a telephone conference to set a briefing schedule."); Ex. B, Feb. 9, 2024 Tr. at 8 (Plaintiff's counsel: "we are here on a briefing schedule.")). The transcripts are not pertinent to the adjudication of any "substantive rights," as Plaintiff wrongly asserts in its February 15 letter to the Court. (Dkt. No. 50.) Rather, a briefing schedule is "ancillary" to a court's role in adjudicating the merits of a case. *Brown*, 929 at 49-50 (2d Cir. 2019); *cf. United States v. Correia*, 19-cr-725-3 (JPO), 2020 WL 6683097, at *1 (S.D.N.Y. Nov. 12, 2020) (holding counsel's declarations are subject to a "lesser" presumption "because they are related to the Court's supervision or management of counsel, authority ancillary to the court's core role in adjudicating a case") (internal quotations omitted). Thus, the presumption of public access relevant to Defendants' request is particularly low.

When the countervailing considerations discussed above are balanced against this low presumption, it is plain that specific and substantial reasons exist for granting Defendants' request to seal. Indeed, the Court should "'consider the degree to which the subject matter is traditionally considered private rather than public,'" the "'nature and degree of injury,' paying heed to 'the sensitivity of the information and the subject,'" as well as the interests of "innocent third parties." *AngioDynamics, Inc.*, 2021 WL 776701, at *2 (quoting *Amodeo*, 71 F.3d at 1051). Here, the confidential information concerns non-public details regarding a planned future transaction involving a foreign-government-affiliated non-party subject to foreign disclosure requirements, who has determined not to disclose the particular details at issue.

District courts in the Second Circuit and elsewhere have routinely granted requests to seal similar non-public corporate transaction information. *See, e.g.*, *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-cv-1308 (RJS), 2016 WL 1276450, at *12 (S.D.N.Y. Mar. 29, 2016) (granting motion to seal "confidential and sensitive business information, including . . . merger discussions"); *In re Lomas Fin. Corp.*, No. 90-cv-7827 (LLS), 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (granting motion to seal the portion of debtor's reorganization plan that could "affect the market" and have "a chilling effect on negotiations"); *DeMartini v. Microsoft Corp.*,

No. 22-cv-8991 (JSC), 2023 WL 4205770, at *5 (N.D. Cal. June 26, 2023) (granting motion to seal because "Microsoft provides a limited but compelling factual basis to redact the valuation of the merger and confidential agreements arising out of the same because it could harm Microsoft's competitive standing and future negotiations with competitors."); *Santelices v. Apttus Corp.*, No. 19-cv-7414 (HSG), 2020 WL 5870509, at *4 (N.D. Cal. Oct. 2, 2020) (granting motion to seal merger agreement and related email due to their confidential content and because they were "unrelated to the public's understanding of the judicial proceedings in this case").

   Accordingly, Defendants respectfully request that the Court seal the narrowly-tailored portions of the February 7 and 9 transcripts, as highlighted in yellow on Exhibits A and B.

       Respectfully submitted,

     HANCOCK ESTABROOK, LLP

     John G. Powers


cc:  Plaintiff's Counsel (*via* ECF)