# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
THE RESEARCH FOUNDATION FOR THE
STATE UNIVERSITY OF NEW YORK,

                       Plaintiff,

vs.                                    1:24-cv-120

INPRIA CORPORATION and
JSR CORPORATION,

                       Defendants.
----------------------------------------------------x

**TRANSCRIPT OF TELEPHONE CONFERENCE**
**BEFORE THE HONORABLE BRENDA K. SANNES**
**February 7, 2024**

APPEARANCES (by telephone)

For Plaintiff:

    LAMARCHE SAFRANKO LAW PLLC
    987 New Loudon Road
    Cohoes, New York 12047
    BY:  ANDREW R. SAFRANKO, ESQ.

    SUSMAN GODFREY LLP
    1000 Louisiana
    Houston, Texas 77002
    BY:  JUSTIN A. NELSON, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

```
SUSMAN GODFREY LLP
401 Union Street
Seattle, Washington 98101
BY:  JOHN SCHILTZ, ESQ.

SUSMAN GODFREY LLP
1301 Avenue of the Americas
New York, New York 10019
BY:  SAMIR DOSHI, ESQ.

SUSMAN GODFREY LLP
1900 Avenue of the Stars
Los Angeles, California 90067
BY:  ARGIE MINA, ESQ.
```

For Defendants:

```
HANCOCK ESTABROOK, LLP
100 Madison Street
Syracuse, New York 13202
BY:  JOHN G. POWERS, ESQ.

PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
BY:  NAVEEN MODI, ESQ.
     ERIC DITTMANN, ESQ.
     JOSHUA BENNETT, ESQ.
     ISAAC ASHKENAZI, ESQ.
     PHILLIP CITROEN, ESQ.
```

Also Present:  Hugh Magee

COURTROOM DEPUTY:  Good afternoon.  The date is Wednesday, February 7th, 2024.  The time is 4:39 p.m.

We're here on the matter of the Research Foundation for the State University of New York v. Inpria Corporation, et al.  May I have appearances for the record starting with plaintiff, Mr. Safranko?

MR. SAFRANKO:  Yes.  Andrew Safranko from Lamarche Safranko Law for the plaintiff State University of New York Research Foundation.  Good afternoon, your Honor.

THE COURT:  Good afternoon.

MR. NELSON:  Good afternoon, your Honor.  This is Justin Nelson from Susman Godfrey, and with me on the line I have John Schiltz, Argie Mina and Samir Doshi also all from Susman Godfrey.

THE COURT:  Good afternoon to you all.

MR. POWERS:  Good afternoon, your Honor.  John Powers, Hancock Estabrook, local counsel for the defendants Inpria Corporation and JSR Corporation.  Appearing with me on the call with the Paul Hastings Law Firm are the following attorneys:  Eric Dittmann, Naveen Modi, Joshua Bennett, Isaac Ashkenazi and Phillip Citroen.  Judge, Mr. Modi and Mr. Citroen have pro hac vice motions pending, and Mr. Dittmann and Mr. Bennett have filed applications for permanent admission to the NDNY pending, and Mr. Ashkenazi's papers are in the process of being prepared.  Mr. Dittmann

will be the attorney handling the call for the defendants.

Judge, before we get started with discussing the schedule, at the appropriate time I would like to raise a housekeeping issue with you about the potential for confidential information being discussed on the call.

THE COURT:  Thank you, Mr. Powers, and good afternoon to all counsel.  And I understand there is another individual on the line.  We have a court reporter so I think you need to speak a little slower.  Your name is Hugh, and what's your last name?

MR. MAGEE:  It's Magee, M-A-G-E-E.

THE COURT:  And you're with?

MR. MAGEE:  HBK.

THE COURT:  Gotcha.  Thank you.

Mr. Powers, is this something you wanted to raise now or as we go along, the housekeeping issue?

MR. POWERS:  Actually probably both.  I just would like to give you an overview so you're aware of it when it comes up, if it comes up.  It may be relevant to the Court's discussion of the briefing schedule today for Mr. Dittmann to discuss a piece of confidential business information.  If that comes up during the call, we would request that at that point in time the call be limited to the Court and outside counsel only, and that that part of the transcript either be sealed or redacted until the parties can agree to terms of an

appropriate protective order.  I just wanted to flag that issue for you now so that you are aware of it if it comes up during your discussions with Mr. Dittmann.

THE COURT:  Thank you, Mr. Powers, that's helpful.

So let me start by saying this is a telephone conference to set a briefing schedule.  And I know the plaintiff had suggested a briefing schedule that, of course, now is a little bit -- the defense is going to need a little bit more time.  And I had directed the parties to meet and confer in an attempt to set a briefing schedule.  Have the parties done that?

MR. NELSON:  This is Justin Nelson and I'll be speaking on behalf of the plaintiff.

We have met and conferred on a phone conference on Monday and follow-up emails since then, but we were unable to agree on a schedule in large part just because of the disagreement on urgency, and I'm happy to address that in more detail, but we were not able to agree.

THE COURT:  Okay.  Mr. Dittmann, do you have anything to add to that?

MR. DITTMANN:  Yes, your Honor.  Eric Dittmann on behalf of defendants.

That is correct that we did have a meet and confer and I'm happy to give you a little background there and let you know our thoughts on the schedule.

THE COURT:  That would be great.

MR. DITTMANN:  Thank you.  So, the first we heard of the plaintiff's intention to file their motion was a few hours after they filed their complaint on January 25th, and this is despite the fact that they were aware of many of the patents at issue at least a year, if not longer, before they filed their complaint.  And according to the Mroz affirmation that was filed along with their motion, plaintiffs have had their attorneys working on their arguments in this case since at least May of last year.

So what we have is a motion that purports to incorporate all the allegations of its 367-page complaint and they're asking for extraordinary relief, including prohibiting our client from practicing his inventions which would essentially require it to stop conducting its business, so we believe as a matter of fairness that we should be provided with an adequate amount of time to respond to these voluminous papers.

And that said, we believe we can sufficiently explain why plaintiff's motion has no merit.  We were willing to compromise on a March 6th response date, and we did propose that to plaintiff on Monday, and plaintiff rejected that compromise and we did not get any counteroffer, so our position continues to be that March 6th would be the absolute earliest that we should be required to respond.

But I wanted to also at this time, your Honor, I will be prepared to get into, if you wanted to hear it, the confidential information that Mr. Powers alluded to earlier, which to defendants at least explains why this urgency alleged by plaintiff simply doesn't exist.  But I wanted to pause there to see first if your Honor had any questions and whether you wanted me to get into this confidential information that would require us taking some precautions.

THE COURT:  Okay.  And let me ask if Mr. Nelson could respond to the March 6th date.

MR. NELSON:  Thank you, your Honor.  First of all, I want to just make sure that I think Mr. Dittmann misunderstood what we talked on Monday.  Our position was and continues to be that we are amenable to having a schedule that works for defendants and for the Court with the proviso that we believe that the motion needs to be resolved prior to the commencement of the tender offer as laid out in paragraph 19 of the declaration.  We gave notice to defendants on November 6th about this.  There was a nondisclosure and tolling agreement that expired in late January.  We filed suit very shortly thereafter and gave notice to defendants that same day and asked for a response.

And so, obviously, our papers lay out exactly why we think that there would be harm when the tender offer starts, and we filed our motion to show cause, proposed order

to show cause because we thought the 21 days was not sufficient in light of the publicly announced date of as early as late February 2024, which is what they said in December, and reiterated in the public earnings call this week.

And so for that reason we do not believe March 6th is appropriate.  We believe that the motion should be decided prior to the commencement of the tender offer and we are happy to work with defendants on a schedule with those restrictions.

THE COURT:  Well, it would appear that I would need to hear from Mr. Dittmann about why you believe there is additional information that would be helpful to set a briefing schedule.  But you believe the information's confidential, so how do you propose to convey that to the Court?

MR. DITTMANN:  Your Honor, at your discretion we could limit the call now to outside counsel eyes only with an agreement like Mr. Powers proposed, that any record would be either sealed or redacted until we can work this out.  And we will, of course, work with our colleagues on the other side to make sure we can proceed efficiently, but we need to make sure that the information is protected from disclosure.

THE COURT:  And that's Mr. Dittmann?

MR. DITTMANN:  Yes, this is Mr. Dittmann.

THE COURT:  Is plaintiff's counsel aware right now of the information that you're about to provide to the Court?

MR. DITTMANN:  Yes, we've spoken about it on Monday, they're aware of it, only outside counsel for plaintiff is aware.

MR. NELSON:  Your Honor, on that point defendants did make us available to tell us the information.  We pointed out that we at least need to be able to share this information with our client and so far we have been unable to do so.

MR. DITTMANN:  We sent them yesterday a document that would be an acknowledgment of confidentiality and making sure we knew who would be getting the information and they would be agreed to be bound by confidentiality, and sent that to them yesterday and we just received some comments back shortly before this call.  We will work with them but we obviously need to have appropriate documentation in place before we can share the information outside of the attorneys for this case.

THE COURT:  And do the plaintiffs agree that this information is confidential business information?

MR. NELSON:  Your Honor, I think that's probably a discussion best had when just out of deference to defendants. We do have some questions about what they disclosed for sure. So certainly do not believe that there should have been a

restriction. They told us this like five or six days ago in terms of the information, we've been asking them since then to be able to share the information with our client. And so beyond that, I think we should save the discussion out of deference to defendants until after the hearing is closed.

THE COURT: Okay. Well, I'm going to ask the person from HBK, if you could step off the line. This is something that we may have to have sealed. I can't evaluate that without hearing a little bit more, and because this is an emergency motion, I don't see any other way to kind of move forward at this point. And this was originally set as just a telephone conference to set a briefing schedule.

MR. MAGEE: Your Honor, that's fine. Thank you for explaining to me. I will be dropping off the line now. This is Hugh Magee from KBK ending the call from my side.

THE COURT: Thank you, Mr. Magee.

MR. MAGEE: Thank you, your Honor.

THE COURT: Now I believe, and the courtroom deputy will confirm, that we only have counsel for the parties present on the phone call and court staff.

COURTROOM DEPUTY: Yes, Mr. Magee's call is dropped. We've got IT staff on as well as my line that's still connected over there. Would you like me -- I've got 14 people on the call I can rundown just to make sure, but I'm fairly certain Mr. Magee was the only one we had on that was

not involved in this.

THE COURT: Okay. So why don't you proceed, Mr. Dittmann?

MR. DITTMANN: Yes, your Honor. If I could just ask for plaintiff's counsel to confer that no one is listening in on their lines who is not the individuals who announced themselves on the call.

MR. NELSON: We're all in different locations so I guess I should let each plaintiff counsel speak for himself. For myself, that is true.

MR. SCHILTZ: This is John Schiltz from Susman Godfrey. I can confirm that no one's on the line.

MR. DOSHI: This is Samir Doshi from Susman Godfrey. I can also confirm that no one else is on my line.

MR. MINA: This is Argie Mina also from Susman Godfrey confirming that no one else is on my line.

MR. SAFRANKO: This is Andrew Safranko and also confirm that no one else is on the line.

THE COURT: Perhaps, Mr. Dittmann, you can start with why you believe this should be -- I guess you're asking for the Court to seal what follows?

MR. DITTMANN: That's correct, your Honor.

THE COURT: Could you describe why it should be sealed? What is it? How is it confidential business information? How has it been protected? That sort of thing.

MR. DITTMANN:  This goes to the contents of this confidential transaction that is really at the center of what plaintiff says is creating the urgency here, so perhaps I can describe it a little bit, and I think it will be apparent why it is confidential.

THE COURT:  Okay.

MR. DITTMANN:  So, plaintiff's alleged need for urgent relief related to its motion centers around this potential acquisition of one of the defendants, JSR Corporation, by an entity called Japan Investment Corporation, or JIC, which is owned by the Japanese government.

First I just want to say as a preliminary matter, this transaction that's being discussed between JSR and JIC, this is one step removed from the entity that actually holds the patents at issue, that's a separate defendant, Inpria, which is owned by JSR.

THE COURT:  Let me just make sure I understand that. ████████████████████████████████████████

████████████████████████████████████████

MR. DITTMANN:  ████ ████████████████████████████

████████████████████████████████████████████

███████████████████████

THE COURT:  Okay.

MR. DITTMANN:  And we did explain this to our colleagues on the other side, and my understanding, of course Justin will correct me if I'm wrong, is he said that even if that's correct, even if there was some urgency surrounding the JIC acquisition, they would still want to proceed with their motion.  But we think especially, your Honor, we understand the imposition that this puts on both the parties but also the Court that, you know, there is really no need to rush in and we think that we can do this in an orderly fashion and make sure that all parties are given a fair, full opportunity to be heard.

THE COURT:  Okay.  ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

MR. NELSON:  Your Honor, I think we really need to delve into what exactly Mr. Dittmann said.  Because the ownership of Inpria and JFR are changing and we asked specifically about whether they can speak for JIC in these

representations and they said specifically that they cannot.

MR. DITTMANN:

And so at this point we're just scratching our heads over why we've got to rush to some burdensome PI proceeding when there is really no reason and we think this is all just, frankly, unnecessary.  But we're, of course, willing and able to explain to your Honor given the appropriate time why this

*Telephone Conference - 2/7/2024*   15

motion, frankly, completely lacks merit on all levels and we're prepared to do that, but just to make sure that we have adequate time, which of course is the focus of today's call.

THE COURT:  I guess it's --

MR. NELSON:  And the point I was trying to make, your Honor, is that as of the tender offer the owner of Inpria changes, and that is what we outline in our motion about what has caused the urgency and what we outline as early as March 6th in the letter to Inpria and JSR about the need to resolve this shortly.

THE COURT:  Okay.  Well, I do have to set a briefing schedule, so March seems quite a ways away.  It looks like plaintiff's counsel -- or, defense counsel entered a notice of appearance February 5th.  Do you have a date for the -- I know that the papers say the tender, it's set to be acquired as early as late February 2024.  Is there any update, Mr. Nelson, with that date?

MR. NELSON:  No, your Honor.

THE COURT:  If you could identify who's speaking. We have a court reporter who needs to transcribe everything.

MR. DITTMANN:

THE COURT:  Okay.  So then why do we need the kind of time frame that, Mr. Nelson, that you're talking about?

MR. NELSON:  I think, again I think we need this to be completed.  I think as we understand the tender offer, the first day that the tender offer opens and commences, which is as early as late February, and that has not changed as of the earnings call on Monday, that JIC will take majority ownership as early as the first day, as we understand it, and at that point the cat is out of the bag, however you want to say it, in terms of the consequences for that.

Now, obviously it's depending upon your Honor's show cause ruling if we are going to delay the start of the tender offer, there is more time, and we're open to that as well.

MR. DITTMANN:  I believe Mr. Nelson is confusing things.  The February date he keeps referring to is the commencement of the beginning of this transaction, it will

not be complete for some time after that. █████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

THE COURT:  Well, Mr. Nelson said JIC will take majority ownership the day the tender offer begins.  Is that not accurate?

MR. DITTMANN:  We don't believe that's the case, your Honor.

MR. NELSON:  We have asked for more information about that.  We have asked many questions, including on the meet and confer, about this very point and said isn't it true that once the tender offer is open, that the shares will be exchanged and that could lead to majority ownership transferring on the very first day.  And because that's our understanding of how tender offer works.  And they said they didn't know.  And so by all expectations -- just again on Monday the CEO of JFR stated in his call that nothing has changed.  We don't have any new information to report what he stated and that the commencement of the tender offer is expected to be in late February, and talking about the excitement for the tender offer, which suggests that shares can be exchanged that first day that might exceed the

majority of ownership.  Of course, it's all speculation, but we've also asked for more details about this to try to delve down.

Because to be clear, your Honor, we have no interest in burdening the Court on something that does not need urgency.  But from our perspective when JIC is about to take ownership, and again, our understanding is that taking of the ownership could occur as early as the first day of the commencement of the tender offer, which is why we asked for the order to show cause, and we have heard nothing from defendants to refute that in any detail at all that would change at least our understanding that it's certainly possible that after the first day of the tender offer, the commencement of the tender offer, that shares will be exchanged and that JIC will be part of the ownership structure of JSR at that point.

THE COURT:  Okay.  Let me say this.  I'm going to cut this here.  There are a lot of things that are really just unknown.  I don't really feel that I could make a reasonable decision regarding scheduling, so I'm going to ask the parties to go back to the drawing board and meet and confer and share information, and we can meet again on Friday.  Today's Wednesday, that gives you two days to kind of get back together on some of the things that you are each indicating you don't know from the other side, and I can set

*Telephone Conference - 2/7/2024*                    19

a briefing schedule then on Friday.

And let me ask counsel, is there any chance here that the parties might be willing to get together for a settlement conference?  Sometimes we find, you know, at an early stage of the case that if the Court jumps in, it might be able to work out a settlement to save everyone some time and money.  There is a magistrate judge, Mr. Powers knows, Magistrate Judge Peebles, who is excellent at settling complex business situations and also an expert on patent law.  I've run this by him.  He told me he would be available late February, early March, if the parties were interested and he would make phone calls now to get it started, if that's something the parties have some interest in.  So let me throw that out.

MR. NELSON:  Thank you, your Honor.  We would be amenable to such an approach.

MR. DITTMANN:  This is something that we've already sort of discussed, this was raised at some point over the last few weeks.  And we have to say of course we appreciate the offer and we'll talk to our clients.  We do think this might be a case of there really isn't merit we believe to the arguments.  I don't want to say that lightly, but we appreciate it and will take it back to our clients.

THE COURT:  Why don't we plan to meet on Friday, and have counsel meet and confer up to that point on some of

these questions that we seem to have gone back and forth on. And what about Friday afternoon? Let me grab a calendar. What about Friday afternoon at 2:00?

MR. NELSON: With the pleasure of the Court, and that works fine from our perspective.

MR. DITTMANN: Your Honor, I could make that work, although I'll be in a location that I'll have to make sure I hope it won't be very noisy, but I can make that work.

THE COURT: Would later in the day be better or earlier in the day?

MR. DITTMANN: No, we'll make that work, your Honor, thank you.

THE COURT: Okay. We will continue this until 2:00 on Friday. And I'm directing counsel to meet and confer on two issues. One is the briefing schedule so that the Court's provided with some facts that would be helpful, or actually maybe counsel could work out a briefing schedule which would be even better. And two, whether counsel are interested in working with Magistrate Judge Peebles on potentially working towards seeing if there is a possible settlement in the case.

MR. NELSON: You, your Honor. We'll be amenable on both on Friday. One question just on the information shared, we are really in need of information, unless we have information more from defendants, we are awaiting that. And so I think, and Mr. Dittmann and I will continue to speak

over the next couple days, but what we really need is certainty about this commencement of the tender offer and what they can provide about it.

THE COURT:  That makes sense.  So I assume it's in defense counsels' interest to provide information to you that would be helpful in setting reasonable briefing dates.

MR. NELSON:  Thank you, your Honor.

MR. DITTMANN:  We just want to make sure that we have all the protections of our information, so we want to make sure that they can accommodate us in that regard, we appreciate it.

THE COURT:  So I think what we'll do is this transcript will not be -- I'll direct that it not be available to the public at this time.  And I'll ask counsel to review it and then make a motion to redact the portions that you believe should be redacted.  So the entire transcript won't be redacted, but because you have requested that portions be sealed, I'll ask you to review it and propose redactions.

MR. DITTMANN:  Thank you very much, your Honor, that works for us.

THE COURT:  And then with a letter request explaining why the redactions are necessary.

MR. DITTMANN:  Understood.  Will do, your Honor.

THE COURT:  Anything further?

MR. NELSON:  Nothing from plaintiffs, your Honor, thank you.

MR. DITTMANN:  Nothing further here as well, your Honor.

THE COURT:  Thank you, Counsel.  We'll talk to you at 2:00 on Friday.

MR. NELSON:  Thank you, your Honor.

MR. DITTMANN:  Thank you, your Honor.

\*               \*               \*

C E R T I F I C A T I O N

        I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.


                    _____
                        *Eileen McDonough*

                    EILEEN MCDONOUGH, RPR, CRR
                    Federal Official Court Reporter