SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

32ND FLOOR

1301 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK 10019-6023

(212) 336-8330

FAX (212) 336-8340

WWW.SUSMANGODFREY.COM

_____

| | | |
|---|---|---|
| SUITE 5100 | SUITE 1400 | SUITE 3000 |
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 401 UNION STREET |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-2683 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

SAMIR DOSHI
DIRECT DIAL (212) 336-8330

E-MAIL SDOS@SUSMANGODFREY.COM

February 21, 2024

The Honorable Brenda K. Sannes
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse, NY 13261-7336

Re:     *SUNY RF v. Inpria Corporation et al.*, Case No. 1:24-cv-120-BKS-ML (NDNY)

Dear Chief Judge Sannes:

I write in response and in opposition to Defendants' February 20, 2024, letter motion requesting sealing of certain portions of the parties' teleconferences with the Court on February 7 and 9, 2024 (Dkt. 54).

*First*, Defendants now concede that the "rulings on the record"—namely that "the IP at issue will remain subject to the jurisdiction of U.S. courts," and that "the assets of Inpria will not be transferred to JIC until the tender offer is closed"—are not confidential. In the 11 days since the ruling, counsel for Plaintiff SUNY RF was unable to share this information with its client. There was never any valid basis for this now-withdrawn request. *See* Dkts. 47, 50. Defendants did not provide any such basis when the Court requested it on the record during the February 9 teleconference; nor did Defendants provide any such support over the intervening 11 days when counsel for Plaintiff repeatedly requested permission to share these rulings with SUNY RF.

*Second*, Defendants' sealing requests do not comply with the procedural requirements of Local Rule 5.3, which required them to set forth the reasons that each redaction should be sealed under the governing legal standard and to attach a proposed order containing specific findings justifying the sealing. *See, e.g.*, *Tromblee v. New York*, No. 19-cv-638-BKS-CFH, 2022 WL 17266979, at *4 (N.D.N.Y. Nov. 29, 2022) (Sannes, C.J.) (denying sealing where party failed to address each sealing request individually and failed to identify specific bases in support of each redaction); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-cv-598-BKS-CFH, 2021 WL 776701, at *4 (N.D.N.Y. Mar. 1, 2021) (Sannes, J.) (recognizing that "assertions in broad terms" are not

February 21, 2024
Page 2

sufficient); *Brown v. United Parcel Serv., Inc.*, 22-cv-762-cv-BKS-TWD, 2022 WL 17478335, at *3 (N.D.N.Y. Oct. 12, 2022) (denying sealing request for failure to comply with the Local Rules).

Instead of addressing (let alone supporting) each requested redaction individually, Defendants' letter brief simply makes general, sweeping, and conclusory statements that all of the information they seek to be redacted is "non-public." The declaration from Mr. Cohen is no more specific—either as to which statements it portends to support or why such information allegedly is not only non-public but also subject to sealing. "Courts in the Second Circuit have found such conclusory statements insufficient to justify sealing." *Mayer v. Patriot Pickle Inc.*, 23-cv-1299-LJV, 2024 WL 162881, at *4 (W.D.N.Y. Jan. 16, 2024) (collecting cases and denying sealing). Even reading the transcript as a whole, both the unredacted and proposed redacted portions, it is difficult if not impossible to glean which facts Defendants are contending are confidential; there appears to be very little factual information designated at all and even less consistency in what Defendants selected to redact or not redact. Unlike a usual case, moreover, it is important to note that none of the material requested to be sealed was quoted from any business record, deposition transcript, or other discovery document. Indeed, many of the proposed redactions concern *arguments* from counsel, including *Plaintiff's* counsel, and questions from the Court.

Since prior to the hearings, counsel for Plaintiff has asked Defendants to specifically identify in writing which information Defendants contend is confidential and which requires sealing. *See* Dkts. 47, 50, and 54-5 (documenting the same requests). As this Court and others have recognized, Defendants' lack of specificity and failure of support is reason enough to deny their sealing request. After all, if any of subject information in fact constitutes material, non-public information concerning Defendants' desired take-private acquisition, then both the Court and Plaintiff's counsel ought to be specifically and expressly informed to that end.

*Third*, Defendants dramatically understate the public interests and rights of access at issue. It absolutely is true that Plaintiff SUNY RF, other interested persons, and the public all have strong interests in the resolution of Plaintiff's claims, requests for preliminary relief, and Defendants' stated defenses thereto, including any court hearings and orders concerning the same.

SUNY RF is a party to this lawsuit. No one at SUNY RF should be denied access to this Court's orders, and those persons at SUNY RF overseeing this matter and who have agreed to be bound by confidentiality should be permitted reasonable access to all case pleadings and discovery (even if confidential). Defendants' proposed redactions continue to prejudice SUNY RF by preventing counsel from fully and openly discussing Defendants' arguments with its client, including because Defendants also have refused counsel's requests to share any unredacted versions of the transcripts with SUNY RF. *See* Exhibit 1.

Defendants' proposed redactions also prejudice other interested persons who undoubtedly have a strong right of access to these proceedings, hearings, and orders. Indeed, omitted inventors like Dr. Robert Brainard and all other "parties concerned" under 35 U.S.C. § 256 are *statutorily*

February 21, 2024
Page 3

entitled to notice and hearing of Plaintiff's claims to correct inventorship of the intellectual property at issue. Defendants have made no attempt to justify withholding case information pertaining to this intellectual property and Plaintiff's requested relief from these persons either.

As explained in Plaintiff's Complaint and Motion for Preliminary Injunction, the public also has a compelling public interest in the litigation and resolution of this case. *See, e.g.*, Dkt. 24-2, at 16–18, 23–24. SUNY RF is a non-profit education corporation chartered by the New York State Board of Regents. *See* Dkt. 24-23, at 1 (Declaration of Matthew Mroz ¶ 2). SUNY RF's Patents and Inventions Policy is codified into New York law. *See* 8 NYCRR 335.28. This public Policy recognizes and provides that:

- "inventions *of value to the public* will be made by persons working in its facilities";

- "[i]t is the policy of State University to encourage such inventors and inventions and to take appropriate steps to aid the inventor *and ensure that the public receives the benefit*";

- "[t]hese activities are undertaken in a spirit of cooperation with governmental agencies and private industry *as part of State University's contribution to the economic well-being of the State of New York and of the Nation*";

- "[a]ll inventions made by faculty members, employees, students, and all others utilizing university facilities *at any of the State-operated institutions of State University shall belong to State University*";

- "[a]ll net proceeds . . . realized from the marketing of State University inventions *shall be used for the support of State University research programs*"; and

- "State University, at its option, shall receive 10 percent of the net proceeds, *in recognition of the contribution of the State and people of New York to support the research which resulted in said invention*."

Dkt. No. 24-23, at 3–4 (Mroz Decl., ¶¶ 7–11 (quoting 8 NYCRR 335.28) (emphases added)). In short, the citizens of this State and Nation have a strong public interest and right of access in all information concerning the inventorship, ownership, transfer, licensing, use, and proceeds from the disputed intellectual property—and to that end, "the enforcement of the parties' lawful agreement." *Benihana Inc. v. Benihana of Tokyo, LLC*, 7284 F.3d 887, 897 (2d Cir. 2015). Defendants' suggestion that these interests and the longstanding presumption of public access in this State and Nation should now bow to the interests of "a Japanese government-affiliated investment fund" and "the plans of the Japanese government," Dkt. 54 at 1–2, only heightens the public interest, right to public access, and need for immediate relief.

In any event, it is not Plaintiff's "goal" to stop the tender offer or to exert pressure on Defendants—Plaintiff's request is "to avoid the permanent, irreparable, and unprecedented loss of its intellectual property" and to ensure "righting these wrongs [is not] impossible." Dkt. 24-2 at 4, 2. If Defendants mean to assert that granting such relief on a temporary or preliminary basis might

February 21, 2024
Page 4

affect the timing or pricing of Defendants' desired acquisition, that is a product of Defendants' own conduct, *not* Plaintiff's legitimate interest in protecting its rights and the rights of the people of the State of New York in the inventions SUNY created prior to a public corporation's attempt to sell those inventions to "the Japanese government."

*Fourth*, the case law Defendants cite in support of their generalized and vague sealing request is inapposite. Neither *Eur. Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456 (E.D.N.Y. 2001) nor *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 2005 WL 2082846, at *2 (S.D.N.Y. Aug. 30, 2005), concerned sealing at all. The stray quote lifted from the legal standard section of *AngioDynamics*, meanwhile, concerned "commercial competitors seeking an advantage over rivals"—the parties here, however, are *not* competitors. *See* 2021 WL 776701, at *2 (N.D.N.Y. Mar. 1, 2021). Defendants' citation to *Brown v. Maxwell* and its progeny supports public access, *not* sealing: In that case the Second Circuit made clear that material submitted "in connection with dispositive motions"—like Plaintiff's Motion for Preliminary Injunction—is not "ancillary" or subject to any "somewhat lower" presumption. 929 F.3d 41, 50 (2d Cir. 2019). Nor is Defendants' string citation concerning "similar non-public corporate transaction information" any more persuasive: *Playtex Prod., LLC v. Munchkin, Inc.*, contains *zero* discussion of what "merger discussions" were at issue, and in any event, the merger terms here are *finalized*, not part of preparatory "discussions," 2016 WL 1276450, at *12 (S.D.N.Y. Mar. 29, 2016); *In re Lomas Fin. Corp* concerned trading of bankruptcy claims that might affect the viability of debtors, *see* 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991); *DeMartini v. Microsoft Corp. denied* sealing as to certain merger materials for lack of "compelling reasons that would outweigh the public's presumption of access to understanding the merits," and the portion of the order that Defendants cite concerned actual merger "agreements," which are not at issue here, *see* 2023 WL 4205770, at *2 (N.D. Cal. June 26, 2023); and, finally, *Santelices v. Apttus Corp.* likewise concerned a "merger agreement itself" and "the company's internal valuation analysis related to this merger," neither of which are at issue here, 2020 WL 5870509, at *4 (N.D. Cal. Oct. 2, 2020).

In short, Defendants have failed to meet their burden under the Local Rules to demonstrate that each individual redaction is warranted under the controlling legal standards and the strong presumption of public access, including by Plaintiff SUNY RF. Accordingly, SUNY RF respectfully requests the Court deny Defendants' motion.

Sincerely,

*Samir H. Doshi*

Samir Doshi