**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THE RESEARCH FOUNDATION FOR THE
STATE UNIVERSITY OF NEW YORK,

        Plaintiff,

    vs.

INPRIA CORPORATION and
JSR CORPORATION,

        Defendants.

Civil Action No. 1:24-cv-120 (BKS/ML)

---

**CIVIL CASE MANAGEMENT PLAN**

**IT IS HEREBY ORDERED** that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, a status and scheduling conference will be held in this case before the Honorable MIROSLAV LOVRIC, United States Magistrate Judge, on May 29, 2024, at 10:00 AM. The Courtroom Deputy for Judge Lovric will provide counsel for the parties, and any unrepresented parties, with instructions on how to dial into his audio conference line for the Rule 16 conference.

Counsel for all parties or individuals appearing pro se in the above-captioned action are directed to confer in accordance with Fed. R. Civ. P. 26(f) with respect to all of the agenda items listed below, no later than **twenty-one (21)** days before the scheduled Rule 16 Conference. Following that Rule 26(f) meeting, a report of the results of the conference, in the format set forth below, must be filed with the clerk no later than **seven (7) days** prior to the scheduled Rule 16 conference with the Court. Matters which the Court will discuss at the status conference will include the following: (insert a separate subparagraph as necessary if parties disagree):

1. **JOINDER OF PARTIES**: **Any application to join any person as a party to this action shall be made on or before** July 19, 2024.

2. **AMENDMENT OF PLEADINGS**: **Any application to amend the pleadings to this action shall be made on or before** September 23, 2024.

3. **DISCOVERY**: **All discovery in this action shall be completed on or before _____.** **(Discovery timetable is to be based on the complexity of the action)**

   **Plaintiff's Position**: Plaintiff has filed herewith Plaintiff's Proposed Docket Control Order proposing a schedule for all case deadlines, including fact and expert discovery. Plaintiff's proposed schedule permits and ensures that trial in this action will occur within 18 months of the filing of this action, as the Court's Case Management Order requires, *see supra*,

1

Section 7.

Several factors support adhering to the 18-month deadline. Defendants have had notice of this action since November 2023—over two months *before* the complaint was filed. Defendants also filed a lawsuit concerning many of the Challenged Patents in October 2022—that is, ***fifteen months*** before this case was filed. *See Inpria v. Lam* (D. Del. 1:22-cv-01359-CJB) (hereinafter the "*Lam Litigation*"). Defendants have thus long been aware of the material facts relevant here. And promptly resolving the correct ownership and inventorship of those Patents is paramount; as is stands, Defendants are attempting to enforce Patents they do not own, have not invented, and do not have standing to enforce.

As to the discovery schedule, Plaintiff proposes:

- All **fact discovery** shall be completed on or before November 8, 2024. As described below and in the attached Plaintiff's Proposed Discovery Order, Plaintiff has proposed certain limits to and stipulations governing fact discovery in this action.

- All **expert discovery** shall be completed on or before January 31, 2025.

Discovery in this action should not be stayed. ***First***, Defendants' forthcoming motion seeks only ***partial*** judgment on Plaintiff's claims. And courts regularly "refuse[] to stay discovery when the pending motion does not dispose of all the claims." *Morales v. Next Stop 2006, Inc.*, 2022 WL 15523370, at *1 (S.D.N.Y. Oct. 27, 2022); *see also CT Espresso LLC v. Lavazza Premium Coffees Corp.*, 2022 WL 1639485, at *2 (S.D.N.Y. May 24, 2022) (denying stay where defendant filed "Partial MTD"); *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022) ("Tellingly, Defendant does not move for dismissal of the complaint in its entirety."); *Morales v. Next Stop 2006, Inc.*, 2022 WL 15523370, at *1 (S.D.N.Y. Oct. 27, 2022) ("Indeed, courts in this district have previously refused to stay discovery when the pending motion does not dispose of all the claims . . . ."); *Williston v. Eggleston*, 410 F. Supp. 2d 274, 278 (S.D.N.Y. 2006) (denying stay where motion was not potentially dispositive). ***Second***, discovery on the claims that Defendants do not challenge—which include over 100 of Plaintiff's joint inventorship claims—will be probative of every other claim in this case. For example, if discovery reveals that an omitted SUNY RF inventor contributed to one of the claims of a particular patent, then such facts would be pertinent to SUNY RF's claims for breach of contract, breach of fiduciary duty, and unjust enrichment. Courts likewise regularly decline to stay discovery where "[i]t is not clear . . . that judicial economy would be promoted, rather than hindered, by staying discovery that will be necessary irrespective of whether [the movant's motion] is granted." *Dickerson v. Novartis Corp.*, 2016 WL 9560056, at *4 (S.D.N.Y. Apr. 11, 2016). ***Third***, discovery is ongoing in the *Lam Litigation*, and it will concern facts and documents overlapping with what SUNY RF will seek here: evidence of those patents' conception, reduction to practice, commercialization, and use. ***Fourth***, if Defendants seek to stay all discovery in this case, they should comply with the Local Rules concerning discovery motions, so Defendants' motion to stay can be resolved on a full briefing record, under controlling legal standards, and so there is a record for appeal.

2

Finally, the Local Patent Rules do not apply to this action for purposes of discovery or otherwise. *See* Local Patent Rule 1.2 ("These rules apply to all civil actions filed in or transferred to this Court which allege infringement of a patent in a complaint, counterclaim, cross-claim or third-party claim, or which seek a declaratory judgment that a patent is not infringed, is invalid or is unenforceable."). No claim in this case alleges infringement, invalidity, or unenforceability of any patent.

Plaintiff also disagrees with Defendants' request for unilateral "inventorship" contentions for the reasons explained below. Moreover, contrary to Defendants' suggestion, Plaintiff does not oppose claim construction deadlines, disclosures, or briefing. Instead, Plaintiff stated that it had analyzed the claims at issue and, at present, was not aware of any claim terms that it would propose for construction by the Court. But when Defendants stated they wanted claim construction and planned to propose terms for construction, Plaintiff agreed to Defendants' request and incorporated all claim construction deadlines provided by the Local Patent Rules into Plaintiff's proposed schedule. Plaintiff disagrees with Defendants' attempt to depart from and extend the claim construction deadlines provided in the Local Patent Rules.

**Defendants' Position**: The complexity and extensive size of this case is extraordinary: Plaintiff filed a 457-page, 102,000-plus-word Amended Complaint, containing 318 alleged claims for relief, involving 26 patents and over 500 patent claims pertaining to extreme ultra violet lithography and other semiconductor technology. Among the 318 alleged claims for relief, 270 are Plaintiff's allegations for sole and joint inventorship of the 26 patents, and the rest are various contractual, state law, fiduciary, or vicarious liability claims. Moreover, the amount in controversy is billions of dollars by Plaintiff's own assertion.

The case requires rigorous scrutiny, but Plaintiff has been trying to speed up this case to avoid that scrutiny from the outset. For example, shortly after it filed its original complaint, Plaintiff filed a preliminary injunction motion on an alleged emergency basis, seeking to shut down Defendants' business, and Plaintiff was unwilling to consent even to a brief extension of time for Defendants to respond. This required Defendants to file a motion for an extension of time, which the Court granted. The Court then summarily denied the Plaintiff's preliminary injunction motion the day after oral argument, referring to Plaintiff's arguments of irreparable harm as "entirely unpersuasive." (D.I. 76, at 14.) Now Plaintiff does not want to disclose even its patent contentions, nor does it want the Court to properly construe the patent claims at issue (which is necessary for a determination of inventorship), before the close of discovery. Plaintiff does not want to provide Defendants' experts time to opine on the enormous number of Plaintiff's claims, all concerning extraordinarily valuable and cutting edge technology. And Plaintiff insists on a trial by next year—May 2025—in a case that concerns scientific research conducted over approximately 15 years.

As an initial matter, discovery in this action should be briefly stayed pending Defendants' upcoming Rule 12 motion, which will be renewed on June 3, 2024, in response to Plaintiff's recently filed Amended Complaint, and in accordance with the Court's most recent order. (D.I. 90.) As Defendants briefed this Court in their May 10, 2024 letter application (D.I. 88), Defendants' forthcoming renewed Rule 12 motion will seek, *inter alia*, dismissal of many of

Plaintiff's non-inventorship claims, and many of Plaintiff's time-barred claims. It is likely to significantly narrow the substantive issues in dispute if granted, and, thus, make the discovery in this case more manageable and allow the parties to focus on the central issues. By way of two examples, Plaintiff's new fiduciary duty claim and its two remaining vicarious liability theories, both of which Defendants will address in their renewed Rule 12 motion, would create various additional categories of discovery separate and apart from the patent inventorship claims in dispute. Further, this Court ordered that "Judge Lovric shall evaluate whether scheduling a Rule 16 conference and conducting limited discovery would be productive," "after the anticipated motion is filed" on June 3. (D.I. 90.) Thus, the Court acknowledged a brief stay may be appropriate, which is consistent with numerous orders of this Court staying discovery in light of pending Rule 12 motions. *See, e.g., Nt'l Rifle Ass'n of Am. V. Cuomo*, No. 118-cv-566 (TJM/CFH), 2020 WL 7338588, at *6 (N.D.N.Y. Dec. 14, 2020) (granting stay of discovery when "pending motions to dismiss could 'potentially reshape pending claims'") (citations omitted); *Hill v. Soar Restaurants II, LLC*, 5:23-cv-396 (GTS/TWD), Text Order, Dkt. No. 13 (N.D.N.Y. June 14, 2023) ("Court adjourns the Rule 16 conference and related deadlines at this time to preserve judicial resources and the resources of the parties. The Court will reset the Rule 16 conference and related deadlines as necessary after a decision is issued on the pending motion to dismiss").

And even if Defendants' Rule 12 motion successfully narrows the scope of discovery, many of Plaintiff's 270 inventorship claims pertaining to 26 patents and 500-plus patent claims will remain in dispute, and, thus, discovery will take longer than usual. The proper scope of fact discovery, however, remains unknown. Among Plaintiff's 318 alleged claims, at least 270 are for correction of inventorship, but Plaintiff has not identified with specificity the patent claims that it alleges to be the sole and/or joint inventor of, or a detailed explanation for its assertions. To enable the parties to determine the proper scope of fact discovery and conduct it efficiently, Plaintiff should submit its inventorship contentions for each patent claim of which Plaintiff alleges sole or joint inventorship, identifying each such patent claim, the allegedly missing or misjoined inventor(s), the basis for Plaintiff's assertion on a patent claim limitation by patent claim limitation basis for each such inventor, and identifying any documents allegedly supporting that assertion, by July 29, 2024.

Following Plaintiff's contentions, the parties will properly and efficiently conduct fact discovery, which will involve claim constructions. Indeed, given the sheer volume of patent claims and potential claim terms for construction, Plaintiff's contentions are necessary to ensure that the parties are seeking to construe only those terms necessary to resolve the dispute here. Regardless, discovery will require extensive review of documents, depositions, and expert analyses given the number of issues involved (including the number of patents and patent claims), the 22 named inventors at Defendants, and at least nine alleged inventors at Plaintiff. As such, Defendants' position is that all fact discovery in this action should be concluded on or before April 8, 2026, and, all discovery in this action shall be completed on or before December 8, 2026. *See* Defendants' Proposed Discovery Order, Appendix A.

Given that this case will center on Plaintiff's assertion regarding sole and joint inventorship of 26 patents, the Local Patent Rules 3.6 (Amendment to Contentions) and 4.1-4.7 (Claim Construction Proceedings) should apply to this action to the extent they are not in conflict

4

with a discovery schedule, provided in Appendix A of Defendants' Proposed Discovery Order. The Local Patent Rules are for "patent cases." L.P.R. ("Section XV. Local Rules of Procedure for Patent Cases"). These Rules were enacted "for patent cases" before this Court. L.P.R. 1.1 (Preamble). While the Rules expressly apply to patent infringement cases, nothing in the Rules preclude their application to other patent cases, such as ours, where ownership is at issue.

Like in patent infringement cases, patent ownership disputes present complex and unique issues for the Court to manage, including claim construction (L.P.R. 4.1-4.7), which is required where relevant for determining inventorship. *See Ferring B.V. Serenity Pharms., LLC*, No. 17 Civ. 9922, 2020 U.S. Dist. LEXIS 42704, at \*10-\*11 (S.D.N.Y. Mar. 11, 2020) ("[A]n inventorship analysis 'begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby. The second step is then to compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named.'") (quoting *Trovan Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("[A]n inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby.")); *see also Yeda Research & Dev. Co. v. Imclone Sys., Inc.*, 443 F. Supp. 2d 570, 617 (S.D.N.Y. 2006) ("[T]o determine who should properly be named as the inventors of the '866 patent, the Court must begin 'with a construction of each asserted claim to determine the subject matter encompassed thereby [and the second step is] to compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named.'").

Defendants are not aware of any obligation to submit a discovery order or a docket control order to this Court and advised Plaintiff not to submit its proposed orders given how far apart the parties' positions on schedule and discovery limitations remained. Plaintiff disagreed and insisted that it submit its own proposed discovery and docket control orders. As such, Defendants are separately submitting their own proposed discovery and docket control orders providing their proposed discovery limitations and proposed schedule.

4.    **MOTIONS:  All motions, including discovery motions, shall be made on or before _____.  (Non-Dispositive motions including discovery motions may only be brought after the parties have complied with Section IX of General Order #25).**

**Plaintiff's Position**: As outlined in Plaintiff's Proposed Docket Control Order, Plaintiff proposes that:

- All discovery motions be filed on or before November 8, 2024;

- All dispositive motions, including motions to strike expert testimony and Daubert motions, be filed on or before February 13, 2025; that any responses to said motions be filed on or before March 6, 2025; and that any replies in support

5

of said motions be filed on or before March 13, 2025;

- All motions in limine be filed on or before April 24, 2025, and any responses to said motions be filed on or before May 8, 2025.

**Defendants' Position**: As outlined in Defendants' Proposed Discovery Order and Proposed Docket Control Order, Defendants propose that all discovery motions shall be made on or before 30 days after the close of discovery.  Given the complexity and extensive size of the case, all *Daubert* motions and summary judgment motions shall be made on or before 120 days after the close of discovery.

5. **EXPERT WITNESS DISCLOSURE**:  **Plaintiff's Expert Witness disclosure shall be exchanged on or before _____ (at least 90 days before the close of discovery).**  Defendants' Expert Witness disclosure shall be exchanged on or before _____ (at least 45 days before the close of discovery).  Rebuttal Expert Witness Disclosure shall be exchanged on or before _____ (at least 30 days before the close of discovery).

The parties disagree as to both the dates governing and the time allotted for expert witness disclosures and discovery.

**Plaintiff's Position**: As outlined in Plaintiff's Proposed Docket Control Order, Plaintiff proposes that:

- Plaintiff's initial expert disclosures are due on November 22, 2024;

- Defendants' rebuttal expert disclosures are due on December 23, 2024;

- Plaintiff's reply expert disclosures are due on January 17, 2025; and

- Expert discovery shall close on January 31, 2025.

**Defendants' Position**: As stated above in Section 3 and Defendants' Proposed Docket Control Order, Defendants propose all fact discovery conclude on April 8, 2026.  If fact discovery involves claim constructions and *Markman* briefing, as Defendants propose, by the time contentions have been exchanged, Defendants anticipate the parties will have a reasonable understanding of the claim terms that need to be construed to resolve the dispute.  Assuming Defendants' proposed fact discovery timetable is accepted, Defendants believe they can conduct expert discovery in accordance with the following schedule:

- Plaintiff's expert witness disclosures are due on May 12, 2026;

- Defendants' expert witness disclosures are due on August 11, 2026;

- Rebuttal expert witness disclosures are due on September 8, 2026; and

- Expert discovery shall close on December 8, 2026.

Defendants propose that any rebuttal reports shall be limited to include only opinions that respond to specific opinions or analysis disclosed in the initial round of disclosure and shall not include (1) opinions on new issues; or (2) new opinions on previously raised topics that are not directly responsive to previously disclosed opinions.

6.   **MANDATORY MEDIATION**:  **A stipulation selecting mediator must be filed on or before _____.   Mediation must be completed on or before _____.**

The parties are discussing mediation options but do not have a proposed resolution at this time.

7.   **PROPOSED DATE FOR THE COMMENCEMENT OF TRIAL**:  **The action will be ready to proceed to trial on or before _____.   It is anticipated that the trial will take approximately _____ days to complete.   The parties request that the trial be held in _____, N.Y.  (The proposed date for the commencement of trial must be within 18 months of the filing date):**

The parties disagree as to the date, length, and location of trial.

<u>**Plaintiff's Position**</u>: Plaintiff proposes that this action will be ready to proceed to trial on or before <u>June 2, 2025</u>, in accordance with the Court's orders that "[t]he proposed date for the commencement of trial must be within 18 months of the filing date." A trial date within 18 months of filing is just and reasonable, and Plaintiff's Proposed Discovery Order and Docket Control Order will help facilitate and ensure that such trial date holds. Trial should also be held well in advance of that in the *Lam Litigation*, which is currently scheduled for December 2025. As explained above, that litigation concerns many of the same patents at issue here, and Plaintiff is being irreparably harmed by its inability to proceed in the *Lam Litigation* until Plaintiff's ownership and inventorship rights are protected in this case. Plaintiff believes trial will take approximately 10 days.

By contrast, Defendants' proposed schedule incorporates significant and needless delay. For example, although discovery opened under the Federal Rules following our Rule 26 conference earlier this month, Defendants propose staying the service of RFPs and interrogatories until mid-September 2024. As another example, although the Local Patent Rules dictate timelines for claim construction discovery and briefing starting 60 days after the Rule 16 conference, Defendants propose delaying those deadlines so severely that it would result in doubling of the 297 days allotted for claim construction under the Local Rules, resulting in nearly an entire year of delay. As another example, Defendants propose concluding fact discovery ***two years*** from last month (in April 2026), but Defendants have not identified any reasons, extensions, or enhanced discovery limits that would require such time to complete fact discovery. Defendants further propose another unnecessary gap between the close of fact discovery and the start of expert discovery. Finally, as yet another example, Defendants propose expert discovery to close 3 months after the service of Plaintiff's reply expert reports, which is approximately 6 times the amount of time necessary to complete expert depositions.

As to the location of trial, Plaintiff proposes that it occur in Albany. This case was filed in Albany. The two Research Agreements giving rise to Plaintiff's claims expressly provide that "[v]enue shall be exclusively in any state or federal court of competent jurisdiction located in the State of New York, County of Albany." And Albany will be far more convenient for the parties and non-parties, including without limitation because SUNY RF resides there, party and non-party witnesses are located there, physical and electronic records and evidence are housed there, and it also is more convenient for counsel. Plaintiff disagrees with Defendants' atextual, re-interpretation of the parties' forum selection clauses: the "County of Albany" means in the Country of Albany and Syracuse is not in the County of Albany. *Accord, e.g.*, *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76–77 (2d Cir. 2009) ("Given that the forum selection clause contains only obligatory venue language, we will effectuate the parties' commitment to trial in Nassau County. . . . In addition, contrary to Tyler Hill's contention, no reasonable reading of the clause permits the interpretation that the parties had agreed to trial in Suffolk County or Brooklyn because those courthouses were within the Eastern District of New York, which spans an area including Nassau County. Had the parties intended to provide for that result, they could, of course, have drafted a different forum selection clause that communicated that intent."). Defendants' cited case, *Doolittle v. Ruffo*, is inapposite for many reasons, the most important of which is that it did *not* concern a forum selection clause at all. *See* 1996 WL 172693, at \*9 (N.D.N.Y. Apr. 11, 1996). As the United States Supreme Court has explained, "[t]he calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum.' . . . For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citations omitted).

Although Plaintiff does not believe that such a motion should be required here where Plaintiff filed this action in Albany, Plaintiff reserves the right to file a transfer of venue motion pursuant to 28 U.S.C. § 1404(a), which Plaintiff understands Defendants oppose.

**Defendants' Position**:   As outlined in Defendants' Proposed Docket Control Order, Defendants propose that the action will be ready to proceed to trial on or before September 13, 2027, or otherwise 4 months following the Court's ruling on any filed dispositive motions.  Although the scope of this case (including the exact issues and how they will be tried) is currently unknown, it is anticipated that the trial will take approximately 15 to 20 days to complete.  In light of the sheer complexity and size of the case—26 patents and over 500 patent claims are in dispute—Defendants' proposal is reasonable.  Proceeding without rigorous scrutiny into Plaintiff's spurious claims will be extremely prejudicial to Defendants.

As to trial timing, Plaintiff's contention of "irreparable harm" in the event this case is not tried earlier than the earlier-filed *Lam* case has no merit.  This Court has already found "SUNY RF has not, on the record before the Court, met its burden of demonstrating irreparable harm because the harm it alleges is speculative and conclusory." (D.I. 76, at 17.) As explained in Section 3 above, Plaintiff's contentions are necessary to ensure that the

parties are seeking to construe only those terms necessary to resolve the dispute here.  As outlined in Appendix A of Defendants' Proposed Discovery Order and as explained in detail in Section 15 below, Defendants' timetable is reasonable for the parties to exchange contentions and conduct claim constructions as well as extensive fact discovery and expert analyses.

As to trial location, Defendants request that the trial be held in <u>Syracuse, New York, where the case has been assigned</u>.  Defendants' position is that no transfer is warranted.

The one case relied upon by Plaintiff, *Yakin*, 566 F.3d at 74, for its contention that the trial should be conducted in Albany is inapposite.  In *Yakin*, the parties expressly agreed in their forum selection clause that the "place of trial . . . shall be in Nassau County, New York." *Id*.  Here, the venue clause in the Research Agreements does not mention any "place of trial." (D.I. 1-2 (2015 Research Agreement), § 13.)  Moreover, *Yakin* concerned a remand from the Eastern District Court of New York in Suffolk County to New York State Supreme Court in Nassau County, not an intra-federal district transfer from one federal courthouse in a district to another.  Further, the transfer in *Yakin* was appropriate because the parties agreed to a trial in "Nassau County" and United States District Court for the Eastern District of New York does not have any courthouse in Nassau County.  Its courthouses are located in Suffolk County and Brooklyn.

Here, a trial in Syracuse is not inconsistent with the venue clause in the Research Agreements. It states venue shall be "in any state or federal court of competent jurisdiction in the State of New York, County of Albany." (*Id*.)  The Northern District of New York is such a court.  The fact that it has courthouses in both Albany, Syracuse, and elsewhere does not change that the Court's venue includes Albany.  In *Doolittle v. Ruffo*, No. 88-CV-1175, 1996 WL 172693, at \*9 (N.D.N.Y. Apr. 11, 1996), this Court transferred a case for trial from Syracuse to Binghamton, and Plaintiff moved pursuant to 28 U.S.C. §1404(a)(b) to transfer it back to Syracuse.  The Court denied the motion.  It explained that the Court's decision to transfer the case for trial did not "constitute a change of venue" because "Binghamton and Syracuse are both within the same district; i.e., the Northern District of New York," and held "Plaintiff has no statutory right to have this case tried at any particular location within the Northern District of New York." *Id*.  This case's venue is the Northern District of New York, which includes Albany.  The assignment of this case to the Chief Judge who is based in Syracuse does not change that venue.  No transfer to Albany is needed to comply with the venue clause.

Finally, Syracuse is appropriate as the place of trial.  It is where Judge Sannes and her staff are based.  It is also where both of Defendants' local counsel are based.  All but one member of Plaintiff's counsel team are located outside of the Northern District of New York and thus Albany would not be any more convenient for these attorneys than Syracuse.  At this stage of the case, it remains unclear who will be the testifying witnesses or where they will be located.  Many likely will need to travel regardless of where the trial is located.  Further, to the extent Plaintiff seeks to have this case transferred to Albany, a motion should be required, and Judge Sannes should be consulted because it is her and her staff who would be inconvenienced by such transfer for a potentially lengthy trial.

8.  **Have the parties filed a Jury Demand?** X (YES)  (NO).

Yes. Plaintiff demanded a trial by jury as to all issues so triable.

9.  **What is the basis of the Court's subject matter jurisdiction? If it is diversity jurisdiction under 18 USC § 1332(a), does the complaint allege the citizenship of each party, including the citizenship of all members of any LLC or partnership? See 250 Lake Avenue Associates, LLC v. Erie Insurance Co., 281 F. Supp 3d 335, 341 (W.D.N.Y. 2017) ("[A]n LLC has the citizenship of each of its members for diversity jurisdiction purposes.")**

The parties agree this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different States. The complaint alleges the citizenship of each party. Plaintiff SUNY RF is organized under the laws of New York, and based in Albany, New York. Defendant Inpria is a corporation organized under the laws of Delaware and has a regular and established place of business at 1100 NE Circle Blvd., Suite 360, Corvallis, Oregon 97330. Defendant JSR is a corporation organized under the laws of Japan and has a principal place of business at 1-9-2 Higashishimbashi, Minato-Ku, Tokyo 105-0021, Japan.

The parties further agree that this Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201 because claims for correction of inventorship pursuant to 35 U.S.C. § 256 arise under the patent laws of the United States.

It is Plaintiff's position that this Court also has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367 because the state and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Defendants do not take a position as to any supplemental jurisdiction and note that they intend to move for judgment on the pleadings seeking dismissal of most of Plaintiff's state and common law claims.

10.  **Are the parties subject to the Court's jurisdiction? Have all parties been served?**

Yes. The parties are subject to the Court's jurisdiction. Defendant Inpria has been served and Defendant JSR has agreed to waive service.

11.  **What are the factual and legal bases for Plaintiff's claims and Defendants' defenses (including counterclaims and crossclaims, if applicable)?**

The factual and legal bases for Plaintiff's claims and Defendants' defenses are as alleged in the parties' pleadings and responsive pleadings, and as will be developed during discovery and throughout the course of these proceedings. There are presently no counterclaims or crossclaims.

10

**12.   What factual and legal issues are genuinely in dispute?**

The parties disagree as to what factual and legal issues are genuinely in dispute.

**13.   Can the issues in litigation be narrowed by agreement or by motions? Are there dispositive or partially dispositive issues appropriate for decision on motion?**

**Plaintiff's position**: Plaintiff submits that following the completion of discovery it may be entitled to summary judgment and/or partial summary judgment. Plaintiff is willing to confer with Defendants regarding factual stipulations, including to narrow the factual or legal issues in dispute. Plaintiff disagrees that Defendants have meritorious motions for partial judgment on the pleadings or summary judgment.

**Defendants' position**: Defendants submit that the issues can be narrowed by agreement or by motions, including by Defendants' pending Motion for Partial Judgment on the Pleadings, filed April 24, 2024 (D.I. 85), and which will be amended and resubmitted in light of the Amended Complaint (D.I. 86).  Defendants also intend to file motions for summary judgment at the appropriate time, which should dispose of some or all of the remaining claims.

**14.   What specific relief do the parties seek?  What are the damages sought?**

Plaintiff seeks monetary, declaratory, injunctive, and equitable relief as specified in its Complaint. Damages alleged include compensatory damages in an amount to be determined at trial; disgorgement; any pecuniary gains realized by Defendants or deprived to SUNY RF; pre-judgment and post-judgment interest, as well as any costs, expenses, and attorneys' fees allowed by law and/or under the parties' contracts; and any other relief as this Court may deem just and proper under the circumstances. Plaintiff expects the appropriate amount of damages to be subject to expert opinion and testimony.

Defendants seek the denial of all of Plaintiff's claims, as well as reimbursement of their costs and expenses; and any other relief as this Court may deem just and proper under the circumstances.

**15.   DISCOVERY PLAN**

**Plaintiff's position**:

Plaintiff has filed herewith a Proposed Discovery Order and Proposed Docket Control Order that it requests be entered by the Court. These proposed orders impose limits, procedures, and timelines for fact and expert discovery. They will help to "secure the just, speedy, and inexpensive determination" of this action. Plaintiff has repeatedly requested Defendants meet and confer by phone on the parties' competing Proposed Discovery Orders, and Plaintiff remains willing to do so—but Defendants have refused.

Plaintiff's position is that Local Patent Rules do not apply to, and do not fit the contours of, this action. The Local Patent Rules state "These rules apply to all civil actions filed in or

transferred to this Court which allege infringement of a patent in a complaint, counterclaim, cross-claim or third-party claim, or which seek a declaratory judgment that a patent is not infringed, is invalid or is unenforceable." Local Patent Rule 1.2. Not one of those circumstances is present in this case. To the extent certain fact or legal issues arise in this case that are similar to or parallel to some of the requirements of the Local Patent Rules, Plaintiff's position is that such facts and contentions can be discovered through discovery, such as document productions, interrogatories, depositions, and expert reports and testimony.

Plaintiff further notes that Defendants have contended that only certain portions of certain Local Patent Rules should apply, while all other portions of those Rules and other Rules should not apply. It is Plaintiff's position that Defendants have strategically selected the Local Patent Rules that they believe will impose delay or burden on Plaintiff, while selectively omitting other Local Patent Rules that Defendants do not want to apply to Defendants. For instance, Defendants now contend that Local Patent Rules 4.1–4.7—which govern claim construction proceedings—should apply. But Defendants propose significantly extending the claim construction deadlines and durations between deadlines that would apply under the Local Patent Rules. For example, whereas the Local Patent Rules require exchange of claim terms for construction to occur 60 days after the Rule 16 conference (here, July 28, 2024), Defendants inexplicably contend that such disclosure deadline such be extended until November 26, 2024—a four-month delay from the Local Patent Rules that Defendants contend should apply. These proposed delays are even more significant when considered collectively: whereas the Local Patent Rules dictate 297 days between filing and full *Markman* briefing, Defendants' proposed departures from the Local Patent Rules for claim construction would result in **_614 days_** between filing and full *Markman* briefing—more than double than the Local Rules would provide and nearly an **_entire year_** of delay.

As another example, Defendants contend that Plaintiff must provide "inventorship" contentions and that such contentions be subject to Local Patent Rule 3.6's requirement for good cause and order of Court to amend such contentions. But the Local Patent Rules do not provide for any such inventorship contentions. They provide only for patent infringement and invalidity contentions, neither of which will exist in this case. Tellingly, even though Plaintiff has pleaded claims of misjoinder of inventorship against Defendants under Section 256, Defendants' "inventorship" contentions proposal also omits Defendants from having to provide their own such contentions as to which patent claims they allegedly invented, with supporting evidence. Also telling, although Defendants would impose inventorship contentions on Plaintiff under the guise of the Local Patent Rules, Defendants have strategically rejected the applicability of other Local Patent Rules that do expressly apply to alleged patent owners like Defendants—including, for example, Local Patent Rules 3.2(b) (documents evidencing conception and reduction to practice); 3.2(c) (patent file histories); 3.2 (d) (documents evidencing ownership of patent rights); and 3.1(g) and 3.2(e) (claims charts and documents showing that any instrumentality embodies any asserted claims).

**Defendants' position**:  Defendants disagree with Plaintiff's characterization of the parties' negotiation of the discovery order.  After the Rule 16 Conference was scheduled by the Court in its January 26, 2024 order (D.I. 9), Plaintiff did not send any proposals regarding discovery or the case schedule until three months later in late April 2024.  Defendants attempted to

negotiate discovery limitations and the schedule that needed to be addressed in this case management plan under time constraints, including by making detailed edits to Plaintiff's proposed discovery order and inviting Plaintiff to make counter proposals. Plaintiff failed to do so and never sent Defendants any edits or specific issues that it would want to discuss. Plaintiff and Defendants, thus, remained far apart on a number of important issues, including whether to exchange contentions and claim constructions, discovery timeline and cutoff date, as well as trial start date. Given how far apart the parties remained, Defendants proposed that the parties continue to negotiate. However, Plaintiff refused to agree that its proposed discovery order and docket control order were not ripe for submission and insisted that it submit its own. As such, Defendants have prepared and submitted herewith their proposed discovery order and docket control order for this Court's consideration.

Given that this case will center on Plaintiff's assertion regarding inventorship of 26 patents, Defendants position is that the Local Patent Rules 3.6 (Amendment to Contentions) and 4.1-4.7 (Claim Construction Proceedings) should apply to this action to the extent they are not in conflict with a discovery schedule, provided in Appendix A of Defendants' Proposed Discovery Order. The Local Patent Rules are for "patent cases." L.P.R. ("Section XV. Local Rules of Procedure for Patent Cases"). These rules were enacted "for patent cases" before this Court. L.P.R. 1.1 (Preamble). While the rules expressly apply to patent infringement cases, nothing in the rules preclude their application to other patent cases, such as ours, where ownership is at issue. Like in patent infringement cases, patent ownership disputes present complex and unique issues for the Court to manage, including claim construction (L.P.R. 4.1-4.7), which is required where relevant for determining inventorship. *See Ferring B.V. Serenity Pharms., LLC*, No. 17 Civ. 9922, 2020 U.S. Dist. LEXIS 42704, at \*10-\*11 (S.D.N.Y. Mar. 11, 2020) ("[A]n inventorship analysis 'begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby. The second step is then to compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named.'") (quoting *Trovan Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("[A]n inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby.")); *see also Yeda Research & Dev. Co. v. Imclone Sys., Inc.*, 443 F. Supp. 2d 570, 617 (S.D.N.Y. 2006) ("[T]o determine who should properly be named as the inventors of the '866 patent, the Court must begin 'with a construction of each asserted claim to determine the subject matter encompassed thereby [and the second step is] to compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named.'"). As stated in Section 3 above, Plaintiff's contentions and claim constructions are necessary to enable the parties to determine the proper scope of fact discovery and conduct it efficiently.

Defendants disagree that their proposed timetable for fact discovery that involves claim constructions imposes "delay" or any unreasonable "burden" on Plaintiff. The Local Patent Rules do not contemplate a large case like ours where 26 patents and over 500 patent claims are in dispute. Given the significant complexity and size of the case, Defendants provided roughly two times longer than what is contemplated in the Local Patent Rules. *Compare* Defendants' Proposed Discovery Order at Appendix A *with* L.P.R. at Appendix A.

Defendants' proposed timetable is still very aggressive.  The complexity and size of our case is unprecedented in this Court.  Median time from filing to jury verdict and filing to bench and jury verdict in patent cases in this Court is 3.6 years and 5.4 years, respectively.  *See* Westlaw Litigation Analytics, U.S. District Court for N.D.N.Y. Outcome Analytics by Case Type and Outcome:  Patent Cases from Filing to Verdict (last accessed May 7, 2024).  For example, it took 5 years from filing to jury verdict where two patents and two patent claims were at issue in an infringement case.  *PPC Broadband, Inc. v. Corning Optical Communications RF, LLC* (5:11-cv-00761); *see also Cargill, Inc. v. Sears Petroleum & Transport Corp.* (5:03-cv-00530) (taking two years from filing to jury verdict when one patent and one patent claim were at issue); *Cornell University v. Hewlett-Packard Co.* (5:01-cv-01974) (taking 8 years from filing to bench verdict where one patent and three patent claims were at issue).

A.    <u>**Mandatory Disclosures**</u>  **The parties will exchange the mandatory disclosures required under Rule 26(a)(1) at least seven (7) days prior to the date of the Rule 16 conference, unless they have obtained prior approval from the assigned Magistrate Judge to extend that deadline.**

The parties disagree as to the procedure for and timeline governing Defendants' production in this action of related discovery material from the *Lam Litigation*, which concerns overlapping patents, facts, and expert opinions.

<u>**Plaintiff's position**</u>: Plaintiff proposes detailed procedures with respect to the *Lam Litigation* in Paragraph 5 of Plaintiff's Proposed Discovery Order. Plaintiff proposes that:

- Contemporaneously with its Rule 26 Disclosures on May 22, 2024, Defendants shall reproduce to Plaintiff in this action (1) all documents; discovery responses and disclosures; written or oral testimony or declarations; expert reports, opinions, and written or oral testimony and declarations; and unredacted copies of any confidential pleadings and/or briefs produced and/or filed by Inpria the *Lam Litigation* as of May 22, 2024, and (2) all transcripts of any hearing held in the Lam Litigation as of May 22, 2024; and

- Thereafter, Defendants shall produce these same discovery materials from the *Lam Litigation* on a running and timely basis as they come into existence. As to document productions in particular, Defendants shall reproduce all document productions from the *Lam Litigation* in this action no later than three (3) days after making such production in the *Lam Litigation*.

Plaintiff disagrees with Defendants' attempts to fit this case into the inapposite cases cited below. First, Plaintiff is not seeking wholesale reproduction of all discovery; in particular, Plaintiff is not seeking reproduction of any materials produced by Lam or any third party. Second, *every* patent that Inpria is seeking to enforce in the *Lam Litigation* is at issue in this case and subject to Plaintiff's claims, including Plaintiff's contentions that it is the rightful inventor and owner of those same patents. Inpria documents, written discovery, and

14

pleadings concerning these patents—including their conception and reduction to practice, assignment and licensing history, incorporation or not into Inpria's commercial products, and the benefits they provide and value all plainly are relevant to this action. So too are discovery and pleadings concerning Inpria's interpretation of those patents (for example, what their claims mean and what products and methods allegedly infringe them) and Inpria's positions as to their validity (because whether a claim element was novel and non-obvious informs who invented what when). Indeed, Defendants do not identify any specific claim or issue in the *Lam Litigation* that would not be relevant in this case. Given the obvious overlap and lack of burden to Inpria in reproducing these materials, Inpria should be ordered to do so immediately and without waiting a discovery request.

> **Defendants' position**:   This issue should be addressed through proper discovery mechanisms including requests for production, and not during this Rule 16 conference. Regardless, Plaintiff has no right to seek a wholesale reproduction of Defendants' discovery in the *Inpria v. Lam* (D. Del. 1:22-cv-01359-CJB) (the "*Lam Patent Infringement Litigation*"), to which Plaintiff is not a party and which involves patent infringement.   Any request of production is subject to the general relevancy and proportionality requirements of Federal Rule of Civil Procedure 26(b)(1).   A mere contention that another case involves some of the same patents is not sufficient to request a wholesale reproduction of discovery in that other action.   *See Lima LS PLC v. PHL Variable Ins. Co.*, No. 3:12-CV-1122, 2014 WL 5471760, at *1 (D. Conn. Oct. 22, 2014) ("Similar allegations and/or potential witnesses are not a basis for production of all documents produced in other cases where Phoenix is a party . . . . Simply put, relevant [documents] will be produced in this case anyway, regardless of whether previously produced in other Phoenix litigation") (internal quotations omitted); *In re Google RTB Consumer Privacy Lit.*, No. 21-cv-02155, 2022 WL 1212015, at *2-*3 (N.D. Cal. Apr. 25, 2022) ("While plaintiffs are correct that, as a general matter, parties may obtain access to discovery materials gathered or obtained by parties in another litigation, plaintiffs must first demonstrate that the discovery in the other litigation is relevant to the matters at issue . . . .[P]laintiffs may use much more targeted requests for production of documents to obtain the discovery they require").   Plaintiff has not demonstrated "all documents; discovery responses and disclosures; written or oral testimony and declarations; and unredacted copies of any confidential pleadings and/or briefs produced and/or filed by Inpria" in the *Lam Patent Infringement Litigation* are relevant and proportionate to this action.   While certain patents disputed in *Lam Patent Infringement Litigation* are at issue in this action, *Lam Patent Infringement Litigation* involve different claims, specifically, patent infringement claims, and involve defenses not relevant to this action.

B.   **Subjects of Disclosure  The parties jointly agree that discovery will be needed to address the following subjects:**  (i) the inventorship of the Challenged Patents[1];

---

[1] The parties dispute the meaning of the term "Challenged Patents." Plaintiff's position is that the term at a minimum encompasses all items listed in paragraph 33 of the First Amended Complaint and any intellectual property or information related in whole or in part to those items.

(ii) ownership of the Challenged Patents; (iii) the parties' respective rights and obligations pursuant to the Research Agreements; (iv) causation; and (v) Plaintiff's alleged damages.

C.   **<u>Discovery Sequence</u>  Describe the parties' understanding regarding the timing of the discovery, and state whether it is anticipated that discovery will be phased to address different issues in stages.**

**<u>Plaintiff's position</u>**: As provided in Plaintiff's Proposed Docket Control Order, Plaintiff proposes that:

- Documents shall be produced on a rolling basis, and in no event shall the parties fail to complete the first significant production of documents on or before June 24, 2024;

- The parties shall complete production of substantially all documents no later than 45 days before the closing date of fact discovery, *i.e.*, on or before September 24, 2024;

- Fact discovery shall close on November 8, 2024; and

- Expert discovery shall close on January 31, 2025.

**<u>Defendants' position</u>**: Defendants propose that:

- Plaintiff submit its contentions for each patent claim that Plaintiff alleges sole or joint inventorship, identify each such patent claim, the alleged missing inventor(s), the basis for that assertion on a patent claim limitation by patent claim limitation basis for each such inventor, and identify any documents allegedly supporting that assertion on or before July 29, 2024;

- The parties exchange their first sets of requests for production and interrogatories on or before September 12, 2024;

- The parties exchange claim terms for construction on or before November 26, 2024;

- The parties exchange proposed constructions on or before January 6, 2025;

- The parties prepare a joint claim construction statement on or before February 17,

---

Defendants note that Plaintiff's definition of "Challenged Patents" here is inconsistent with the definition of "Challenged Patents" that Plaintiff itself provided in paragraph 33 of the First Amended Complaint (D.I. 86), as follows: "[the 26 patents], as well as the children and foreign counterparts of these patents, whether granted and issued, pending, or yet-to-be-filed children and foreign counterparts of these patents." (*Id.*)

2025;

- The parties complete claim construction discovery on or before April 18, 2025;

- The parties produce documents on a rolling basis and complete a substantial production of documents on or before October 10, 2025;

- The parties submit opening Markman briefs and opposing Markman briefs on July 17, 2025 and September 30, 2025, respectively;

- The parties conclude fact discovery on or before April 8, 2026; and

- The parties complete expert discovery on or before December 8, 2026.

**D.    Written Discovery   Describe the written discovery demands which the parties contemplate serving under Rule 33, 34, and 36, including when they will be promulgated, that areas to be covered, and whether there is any need for any party to exceed the number of interrogatories permitted under Rule 33.**

**Plaintiff's Position**:

This is one of the issues Plaintiff requested a telephonic meet and confer regarding, but the parties have not yet had one. As provided in Plaintiff's Proposed Discovery Order—which contains the limits, procedures, and stipulations that Plaintiff believes should govern written discovery the instant action—Plaintiff proposes that each side serve up to 40 interrogatories (and that any interrogatory regarding one or more Challenged Patents shall count as only one interrogatory). If Defendants intend to count any interrogatory seeking information regarding the Challenged Patents as twenty-six separate interrogatories, then additional interrogatories likely will be required.

Defendants agree that each side may serve up to 40 interrogatories but disagree that any interrogatory regarding one or more Challenged Patents shall count as only one interrogatory. Defendants' proposed counting—that any interrogatory concerning the Challenged Patents allegedly will count as 26 different interrogatories—is not easily squared with Defendants' other discovery positions contending that additional time or discovery will be necessary to get this case ready for trial. Regardless, Plaintiff seeks resolution of this counting dispute now to avoid inconsistent treatment or disputes later.

Plaintiff and Defendants agree that each side may serve up to 50 requests for admission, and that this limit does not apply to requests for admission that seek an admission as to the authenticity of a particular document or thing.

**Defendants' Position**:  Defendants disagree that Plaintiff requested a meet and confer specifically on this issue, and disagree that Defendants refused to meet and confer.  To the contrary, Defendants requested that Plaintiff provide a list of issues Plaintiff wished to discuss and it is Plaintiff who refused to provide any such list until 10:03 p.m. Monday, at which point there was no time to meet and confer prior to today's deadline.

17

As provided in Defendants' Proposed Discovery Order—which contains the limits, procedures, and stipulations that Defendants believe should govern written discovery in this action—Defendants propose that each party may serve up to 40 interrogatories. Given the default limitation on the number of interrogatories each party can serve is 25 under the Federal Rule of Civil Procedure 33(a)(1), 40 is sufficiently large enough to accommodate the complexity and size of this case.  Further, the Federal Rules of Civil Procedure specifically require each of the "discrete sub parts" to be counted as one interrogatory.  *See* Notes of Advisory Committee on Rules – 1993 Amendment ("Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects"). Plaintiff's attempt to count any interrogatory regarding one or more Challenged Patents as only one interrogatory directly contradicts the Federal Rules of Civil Procedure, and Plaintiff has not provided any legal basis to support its position.

**E.**    **Depositions**  **Set forth the parties' expectations regarding depositions, including the approximate number to be taken, their location, a general description of the deponents, and an indication of whether any non-party fact depositions are anticipated.**

**Plaintiff's position**: This is one of the issues Plaintiff requested a telephonic meet and confer regarding, but the parties have not yet had one. As outlined in Plaintiff's Proposed Discovery Order Plaintiff proposes the following limits for fact and expert depositions:

- each side is presumptively entitled to depose any named or allegedly omitted inventor for up to seven (7) hours (the seven (7) hour limit shall (i) not apply if any named or allegedly omitted inventor is designated as Rule 30(b)(6) representative by the other Side, and; (ii) may be extended for any named or allegedly omitted inventor by agreement of the parties or by order of the Court for good cause shown under Federal Rule of Civil Procedure 30(d)(1);

- independent of the inventor deposition limits imposed above, each Side may take no more than 50 hours total of Rule 30(b)(1) or 30(b)(6) depositions of the other Side and any third parties (depositions on written questions of custodians of business records for third parties shall not count towards the foregoing limits, and if a single witness is designated for voluminous Rule 30(b)(6) topics, the parties will confer on the time for that witness);

- if a fact witness will appear at trial and has not yet been deposed, the other Side may take a deposition of that fact witness in advance of any trial testimony; and

- each testifying expert witness may be deposed for up to seven (7) hours (to the extent any supplemental reports are served, any additional deposition time shall be addressed either by agreement of the parties or order of the Court).

Plaintiff specifically disagrees that each deposition should be counted as 3.5 hours, even if the time spent on the record is less than 3.5 hours. Such a rule provides the wrong incentives

18

and will likely lead to longer rather than shorter and more streamlined depositions, which should be encouraged. Deposition hours should be tabulated by actual time on the record.

**Defendants' position**: Defendants disagree that Plaintiff requested a meet and confer specifically on this issue, and disagree that Defendants refused to meet and confer.  To the contrary, Defendants requested that Plaintiff provide a list of issues Plaintiff wished to discuss and it is Plaintiff who refused to provide any such list until 10:03 p.m. Monday, at which point there was no time to meet and confer prior to today's deadline.

Given there are 22 named inventors at Defendants and at least nine alleged inventors at SUNY RF, the sheer number of depositions being contemplated by both sides inevitably requires a substantial amount of time.  Therefore, as outlined in Defendants' Proposed Discovery Order, Defendants propose:

- each side is presumptively entitled to depose any individual for up to seven (7) hours, but the total time spent asking deposition questions by other side should not exceed more than 100 hours, and each deposition will count for a minimum of 3.5 hours;

- if a fact witness will appear at trial and has not yet been deposed, the other side may take a deposition of that fact witness for up to seven (7) hours (which will not be counted against the 100-hour limit) in advance of any trial testimony; and

- each testifying expert witness may be deposed for up to seven (7) hours (a "testifying expert witness" is a witness whom each side is required to disclose in accordance with Federal Rule of Civil Procedure 26(a)(2)(A)).

F.   **Experts  Set forth the parties' expectations regarding the retention of experts, and identify any particular issues to be addressed by the court concerning the retention and exchange of the information regarding experts, including whether the parties seek a variance from the expert disclosure requirements of the form uniform pretrial scheduling order typically issued by the court (i.e., initial expert disclosure at least ninety days, responsive expert disclosures at least forty-five days, and rebuttal reports due at least thirty days, before the close of discovery).**

The parties agree that:

- A party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705;

- If the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, a party shall provide the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(B); and

- For all other such witnesses, a party shall provide the disclosure required by Federal Rule of Civil Procedure 26(a)(2)(C).

**Plaintiff's position**: This is one of the issues Plaintiff requested a telephonic meet and confer regarding, but the parties have not yet had one. As provided in Plaintiff's Proposed Discovery Order and Plaintiff's Proposed Docket Control Order—which contain the limits, procedures, stipulations, and scheduling that Plaintiff believes should govern expert discovery in the instant action—Plaintiff proposes that:

- Each side is entitled up to three (3) testifying expert witnesses, but each Side can move the Court for an additional expert upon a showing of good cause.

- Expert discovery should begin after the close of fact discovery; in particular, on November 22, Plaintiff shall make any required expert disclosures; on December 23, Defendants shall make any required expert disclosures to rebut Plaintiff's disclosures; and on January 17, Plaintiff shall make any reply expert disclosures.

**Defendants' position**: Defendants disagree that Plaintiff requested a meet and confer specifically on this issue, and disagree that Defendants refused to meet and confer.  To the contrary, Defendants requested that Plaintiff provide a list of issues Plaintiff wished to discuss and it is Plaintiff who refused to provide any such list until 10:03 p.m. Monday, at which point there was no time to meet and confer prior to today's deadline.

Defendants believe it is premature to lock the parties into three experts, as Plaintiff proposes, at this early stage of the case.  Defendants need to assess an appropriate number of experts after Plaintiff identifies with specificity the patent claims that it alleges to be the sole and/or joint inventor of, or explains its assertions in detail.  There is no limitation in the Federal Rules of Civil Procedure on the number of expert witnesses a defendant may employ. Rather, such choices naturally turn on the number of issues in dispute that require scientific, technical, or specialized testimony *and* the scope and level of complexity of the case. Plaintiff's attempt to limit Defendants to three experts is without rule-based precedent and would be highly prejudicial— especially in a case with this degree of complexity and scope.  As such, as Defendants outlined in their Proposed Discovery Order and Docket Control Order, Defendants propose that:

- no specific limit is imposed on the number of testifying expert each side can retain; and

- expert discovery start after the close of fact discovery; in particular, on May 12, 2026, Plaintiff will make any required expert disclosures; on August 11, 2026, Defendants will make any required expert disclosures; and on September 8, 2026, the parties will make any rebuttal expert disclosures, which shall be limited to include only opinions that respond to specific opinions or analysis disclosed in the initial round of disclosure and shall not include (1) opinions on new issues; or (2) new opinions on previously raised topics that are not directly responsive to previously disclosed opinions. responding to opinions provided in previously issued disclosures.

G.  **Electronic Discovery  Set forth the parties' understanding and expectations regarding discovery of electronically stored information.  This description should include any agreements reached with respect to the retention of electronically stored information and the manner in which it will be produced, if requested.  The parties should also identify any agreements regarding the manner in which electronically stored information subject to claims of privilege or work product protection will be handled, and whether a court order will be requested, either on stipulation or otherwise, to address this issue.  If an agreement has been reached on the entry of such an order, provide a brief description of the provisions which will be included in a proposed order.**

**Plaintiff's position**: This is one of the issues Plaintiff requested a telephonic meet and confer regarding, but the parties have not yet had one. Plaintiff disagrees with Defendants' suggestion that entry of a discovery order is premature or otherwise must wait until a schedule is set. Discovery opened following the parties' Rule 26 conference on May 15, 2024, and Defendants are under a continuing duty to preserve, collect, and produce discovery, including ESI discovery, as of the earlier date of (a) Plaintiff's first request for production, or (b) the deadline for Defendants' Rule 26(a) disclosures.

Plaintiff requested Defendants to confer about any proposed limits on electronic discovery, and Defendants have not done so or otherwise provided any such proposed limits for Plaintiff to consider. Plaintiff's position is that discovery of electronically stored information is permitted to the full extent as provided by the Federal Rules. Plaintiff's investigation is ongoing but Plaintiff has already collected certain electronically stored information and intends to make a substantial production of such documents and information with its initial disclosures on May 22, 2024.

As to the form of production of electronically stored information, Plaintiff agrees to provide the metadata fields identified by Defendants in a May 17, 2024, communication entitled "Appendix C" that Defendants submitted in response to Plaintiff's Proposed Discovery Order.

**Defendants' Position**: Defendants disagree that Plaintiff requested a meet and confer specifically on this issue, and disagree that Defendants refused to meet and confer.  To the contrary, Defendants requested that Plaintiff provide a list of issues Plaintiff wished to discuss and it is Plaintiff who refused to provide any such list until 10:03 p.m. Monday, at which point there was no time to meet and confer prior to today's deadline. Defendants further disagree with Plaintiff's characterization of the parties' negotiation of the discovery order.  As stated at the beginning of Section 15 above, Plaintiff spent three months to present its proposals for discovery limitations and schedule.  After Defendants received Plaintiff's proposals in late April, Defendants put an effort to negotiate and reach agreement on discovery schedule and limitations that needed to be addressed in the case management plan under time constraints.  In the attempt to facilitate the negotiation of the case management plan, Plaintiff sent detailed edits to Defendants' proposed discovery order on May 17 and asked Plaintiff to let Defendants know its positions, but Plaintiff never specified its positions to Defendants' proposed discovery order.  Defendants' position remains that Plaintiff's proposed discovery

21

order is not ripe for submission to this Court, but, given its insistence that it submit its version to this Court regardless, Defendants have submitted herewith their proposed discovery order.  As outlined in Section 6 of Defendants' Proposed Discovery Order, Defendants propose the parties agree to specific format of production of ESI, including search terms before commencing discovery of ESI to ensure the scope of discovery is reasonable and proportionate.

H.   **Protective Orders  If the parties anticipate requesting a protective order from the court pursuant to Rule 26(c), describe the basis for the request and nature of the proposed protective order.**

The parties have negotiated a draft Stipulated Protective Order filed herewith that they request the Court to enter and govern this action. All language in the draft Protective Order has been agreed to by the parties, save for four narrow areas of disagreement in paragraphs 16, 20, 36, and 37.

The parties request the Court to resolve the parties' disputes as to these four paragraphs and enter the Protective Order. If the Court believes it would be helpful to hear from the parties as to these disputed provisions, the parties will be prepared to address them at the Rule 16(b) conference.

The parties have agreed to be bound by the agreed provisions of the Protective Order pending the Protective Order's entry by this Court.

I.   **Anticipated Issues Requiring Court Intervention  Provide a brief description of any discovery related issues which, the parties reasonably anticipate, may require court intervention.**

**Plaintiff's Position**: Plaintiff requests the Court enter Plaintiff's Proposed Discovery and Docket Control Orders to set the limits, procedures, and timelines for fact and expert discovery. Plaintiff's experience and position is that these Orders will hopefully lessen the need for court intervention in discovery disputes.

Plaintiff further requests that the Court resolve the parties' disputes regarding the meet-and-confer process, and (as explained above) the timely and rolling production in this action of relevant discovery, pleadings, and records of court proceedings from the *Lam Litigation*.

**Defendants' Position**: Defendants request the Court enter Defendants' Proposed Discovery and Docket Control Orders to set the limits, procedures, and timelines for fact and expert discovery as well as motion practice.

Defendants are seeking a stay of discovery until the Rule 12(c) motion is decided.

16. **Is it possible to reduce the length of trial by stipulations, use of summaries or statements, or other expedited means or presenting evidence? Is it feasible and desirable to bifurcate issues for trial?**

It is not yet clear whether it will be possible to reduce the length of trial using stipulations, summaries, or statements. The parties will endeavor to reduce the length of any trial as feasible. Plaintiff does not believe bifurcation of issues is appropriate. Defendants have not reached a conclusion on the issue of bifurcation given the complexity of the case and the early stage of this proceeding.

17. **Are there any related cases pending before the Judges of this Court?**

No.

18. **In Class Actions, when and how will the class be certified?**

Not applicable.

19. **What are the prospects for settlement?  Please check below the prospect for settlement:**

1 _____2 _____3_____4_____5 _____6 _____7 _____8 ___9 _____10 _____
(Very unlikely → →        →      →      →      → Likely)

A. **Settlement cannot be evaluated prior to _____ (Date).**

The parties are discussing mediation options but do not have a proposed resolution at this time.

B. **How can settlement efforts be assisted.**

It is not known at this time how settlement efforts can be assisted by the Court. The parties will promptly inform the Court upon determining otherwise.

**Complete Question 19 only if your filing order Cover Sheet was checked as an ADR Track case – *Subject to Mandatory Mediation under General Order #47.***

20. **If your case was selected as a qualifying mandatory mediation case, confirm that you have:**

A. **Reviewed General Order #47**

Yes **X** No _____

B. **Reviewed the List of Court Approved Mediators available on the NDNY**

**website?**   Yes <u>X</u> No ____

C.   **Prepared to discuss with the Court, at the conference, whether your case should be opted out of the program?**   Yes <u>X</u> No ____

D.   **Discussed the time frame needed to complete Mandatory Mediation?**      Yes <u>X</u> No __

Pursuant to Fed. R. Civ. P. 26(f), a meeting was held on May 8, 2024, and was attended by

John Schiltz, Samir Doshi, and Andrew Safranko for Plaintiff and by Joshua M. Bennett, Sachiko Taniguchi, and Mary D'Agostino for Defendants.

At the Rule 16(b) conference, the Court will issue an order directing the future proceedings in this action. The parties are advised that failure to comply with this order may result in the imposition of sanctions pursuant to Federal Rules of Civil Procedure 16(f).

***Please detach this case management plan form and file electronically with the clerk no later than seven (7) days in advance of the conference date.***