**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE RESEARCH FOUNDATION FOR THE STATE UNIVERSITY OF NEW YORK, )<br><br>Plaintiff, )<br><br>vs. )<br><br>INPRIA CORPORATION and JSR CORPORATION, )<br><br>Defendants. ) | Civil Action No. 1:24-cv-120-BKS-ML<br><br>FILED UNDER SEAL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**
**SUPPLEMENTAL RESPONSES TO INTERROGATORY NO. 1 TO INPRIA.**

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND.............................................................................4

III.    LEGAL STANDARD..........................................................................................6

IV.     ARGUMENT.......................................................................................................7

      A.      Inpria's Response to Interrogatory No. 1 is Deficient. ...............................7

      B.      SUNY RF's Contention Interrogatories Are Relevant and
             Timely, and Defendants' Objections Are Meritless. ................................12

V.      CONCLUSION..................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Florence v. New York State Dep't of Env't Conservation*,
  2024 WL 1116286 (N.D.N.Y. Mar. 14, 2024) ...........................................................................6

*Jones v. Goord*,
  2007 WL 4377784 (N.D.N.Y. Dec. 12, 2007).............................................................................7

*Rsch. Found. for State University of New York v. Inpria Corp.*,
  2025 WL 472680 (N.D.N.Y. Feb. 12, 2025) ........................................................................1, 10

*Tromblee v. State of New York, et al.*,
  2022 WL 2818222 (N.D.N.Y. July 19, 2022) .............................................................................6

*Utica Nat'l Ins. Co. of Ohio v. PVI Indus., LLC*,
  2025 WL 1448359 (N.D.N.Y. May 20, 2025).............................................................................6

**Rules**

Fed. R. Civ. P. 26...............................................................................................................................1

Fed. R. Civ. P. 33.........................................................................................................................1, 7

Fed. R. Civ. P. 34...............................................................................................................................1

Fed. R. Civ. P. 37...............................................................................................................................1

L. R. 37 ..............................................................................................................................................1

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37(a)(1), The Research Foundation for the State University of New York ("SUNY RF") files this motion to compel Defendant Inpria Corp. ("Inpria") to supplement its response to Interrogatory No. 1, to identify who at Inpria was involved in the Research Projects and their duties, responsibilities, and involvement in the project, and to identify all persons at Inpria who received, maintained, reviewed, accessed, and/or had access to, in either hard copy or electronic form, all Research Project Reports.

SUNY RF files this motion pursuant to this Court's February 17, 2026 order (Dkt. 232). Pursuant to Local Rule 37, SUNY RF confirms that counsel met and conferred with Defendants in good faith on multiple dates, including but not limited to February 3, 23, and 26, and March 5, in addition to many written exchanges, but were unable to resolve the full scope of the disputes.

## I.    INTRODUCTION

A core part of this case concerns Dr. Robert Brainard's development of organometallic photoresists as part of his Molecular Organometallic Resists for EUV ("MORE") Project, the Research Agreements between SUNY RF and Inpria, entered into in 2015 and 2017, and Inpria's subsequent breach of those agreements by secretly appropriating SUNY RF's intellectual property developed in the MORE Project. *See Rsch. Found. for State University of New York v. Inpria Corp.*, 2025 WL 472680, at *1-*3 (N.D.N.Y. Feb. 12, 2025).

Inpria was able to exploit SUNY RF's intellectual property in part because Dr. Brainard and the other Omitted Inventors shared their research with Inpria, in the form of Research Project Reports, to effectuate the development of the project pursuant to the Research Agreements. But SUNY RF "provided Inpria access to SUNY RF's inventions and intellectual property for the limited purpose of completing the Research Projects and for no other purpose." *Id.* at *4 (citation omitted). The Research Project Reports shared with Inpria, included, for example Exhibits A of

1

the Research Agreements, as well as all Scopes of Work, Statements of Works, Invention Disclosure Reports, including all Prior Project IP, Patent Applications, Monthly Reports, Monthly Updates, Final Reports, Final Updates, Plans, and PowerPoint presentations.

SUNY RF alleges that Inpria learned about SUNY RF's foundational intellectual property, sought out that research in nearly every way imaginable, including through a Mutual Non-Disclosure Agreement with SUNY RF and multiple contracts with SEMATECH, and ultimately entered into not one but two Research Agreements to sponsor Dr. Brainard's MORE Project from 2015 through 2019. As part of those Agreements, Inpria specifically requested and SUNY RF provided many hundreds of Research Project Reports—which SUNY RF would subsequently learn Inpria pilfered and incorporated into secret patent filings and commercial products, without permission or license to do so, and in express violation of the Research Agreements and multiple other common law duties.

Accordingly, at the outset of this case SUNY RF issued Interrogatory No. 1 to Inpria to identify all persons at Inpria who participated in the Research Projects and to explain their duties, responsibilities, and/or involvement in the Research Projects, and all Research Project Reports they had received, maintained, reviewed, accessed, and/or had access to in hard or electronic form.

The people involved in the Research Projects, and Inpria's access to SUNY RF's Research Project Reports—which included, for example, SUN RF's Prior Project IP that identified and disclosed Dr. Brainard's MORE Project research predating the Research Agreements—are fundamental to SUNY RF proving how Inpria, and who at Inpria, were "secretly [] incorporating" SUNY RF's IP into "both Inpria's commercial products and methods and patent applications that Inpria ha[s] filed around the world." *Id.* (citation omitted). Indeed, while independently relevant to most if not all of SUNY RF's claims, this information is particularly relevant to SUNY RF's

2

inventorship, ownership, and unlawful commercialization claims. That is because, despite the overwhelming evidence to the contrary, Inpria apparently intends to argue at trial that it independently developed MORE technology (whether in Challenged Patents or commercial products) without reliance on SUNY RF's research. SUNY RF has a need and right to rebut that defense by discovering and informing the jury that the Inpria personnel that are named as inventors on the Challenged Patents and were the chemists developing Inpria's commercial products are the *same people* that participated in the Research Project and received the Research Project Reports.

Inpria claims that this information is just as accessible to SUNY RF as Inpria. But that is not true because SUNY RF is not privy to Inpria's internal document retention and organization systems and practices such that it could determine who at Inpria "received, maintained, reviewed, accessed, and/or had access to in either hard copy or electronic form" each of the Research Project Reports that Inpria received. Nor is SUNY RF in a position to know or determine the respective duties, responsibilities, or involvement that Inpria assigned to each of the persons at Inpria who participated in the Research Projects.

Regardless, as the Court made clear earlier this year, one party saying to another that information is "in this big pot of soup and it's all floating around and [you] can go find it" is "not going to do it in this case." No. 1:24-cv-120-BKS-ML, Tr. of Hr'g at 104-05 (N.D.N.Y. Jan. 6, 2026). At this very late stage of the case—months after Inpria was supposed to complete all of its document productions—Inpria still has not answered the interrogatory in full. SUNY RF needs this information immediately to prepare for the impending depositions of fact witnesses with knowledge of the Research Agreements and Research Project Reports, as well as to begin preparing SUNY RF's expert reports and narrowing its case for trial.

SUNY RF requested that Inpria supplement as requested in this motion by March 6. Inpria

3

failed to do so. Late last night, Inpria supplemented its answer to provide additional information, but that supplemental response still does not answer all subparts or provide a complete response. As such, because Inpria has repeatedly failed to provide a complete answer to this interrogatory, based on a reasonable investigation, and verified under oath by a fact witness, this Court should compel Inpria to supplement its response.

At this stage of case, SUNY RF is entitled to know what MORE research Inpria possessed—and by extension, what Inpria intends to claim that it did *not* possess—and who specifically at Inpria received, maintained, reviewed, accessed, and/or had access to such MORE research prior to and during their work on the Challenged Patents and Inpria's unlicensed commercial products that incorporate Dr. Brainard's MORE technology.

## II.    FACTUAL BACKGROUND

SUNY RF served Interrogatory No. 1 at the outset of this case and reasonably requested Inpria to:

> Identify all persons at Inpria who participated in the Research Projects; explain their respective duties, responsibilities, and/or involvement in the Research Projects; and identify all Research Project Reports that they each received, maintained, reviewed, accessed, and/or had access to in either hard copy or electronic form.

SUNY RF defined Research Projects as "the 'Projects' defined by and subject to the Research Agreements." Ex. 1 at 4 (Interrogatory Responses). SUNY RF defined "Research Project Reports" as "those 'Reports' referenced in the Research Agreements that SUNY RF provided to Inpria as specified in Exhibits A of the Research Agreements, as well as all Scopes of Work, Statements of Works, Invention Disclosure Reports (including all PRIOR PROJECT IP), Patent Applications, Monthly Reports, Monthly Updates, Final Reports, Final Updates, Plans, and PowerPoint presentations provided to Inpria by SUNY RF and/or any omitted inventor during the Research Projects." *Id.*

4

Inpria objected to the interrogatory on the grounds that discovery was just beginning. But Inpria did not object to SUNY RF's definition of "Research Project Reports," either in their general objections or in their specific objections to the interrogatory. Even though SUNY RF has repeatedly followed up on this interrogatory, Inpria's prior supplementations—including the one that it made at 11:55 pm on March 10—remain facially deficient.

Inpria's response is incomplete for a few reasons. First, Inpria has not identified all the Research Projects Reports, defined above and in the definitions section of the interrogatory, that Inpria employees and affiliates identified in the response each received, maintained, reviewed, accessed, and/or had access to. This includes Exhibits A of the Research Agreements, as well as all Scopes of Work, Statements of Works, Invention Disclosure Reports (including all Prior Project IP), and Patent Applications, in addition to the presentations (and the missing presentations) that Inpria has identified.

Second, rather than identifying under oath which Inpria participants received, maintained, reviewed, accessed, and/or had access to the limited Research Project Reports that Inpria does identify, Inpria instead responds that "one or more persons identified below received and had access to one or more of the following documents, which may have related to the Research Projects" and then as to any particular report answers only as to "access" based "upon information and belief," *not* based on a reasonable investigation verified under oath by fact witness with knowledge. Ex. 2 at 22. This is a non-answer and obfuscation to an extreme degree that serves to gut the entire interrogatory, including because the answer will still require SUNY RF to ask each individual participant whether they received, reviewed, maintained, or accessed each Research Project Report.

Third, Inpria still has not explained the respective duties, responsibilities, and/or

5

involvement of each individual involved in the Research Projects.

The time is up for Inpria to make a full, under oath and duly investigated, response to this interrogatory. Given the impending scheduled depositions, which are set to begin on March 27 absent a change in the schedule, and the close of fact discovery on April 30, further delay and withholding of a complete, reasonably investigated, and verified response is not acceptable.

## III.    LEGAL STANDARD

"The party seeking discovery bears the initial burden of proving the discovery is relevant." *Utica Nat'l Ins. Co. of Ohio v. PVI Indus., LLC*, 2025 WL 1448359, at *3 (N.D.N.Y. May 20, 2025) (quoting *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)). In pre-trial discovery, the relevance standard is more liberal than at trial. Relevant material is "construed broadly to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Tromblee v. State of New York, et al.*, 2022 WL 2818222, at *2 (N.D.N.Y. July 19, 2022) (cleaned up).

"Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Id.* (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)). If the responding party objects, then that party must show how, "despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (quoting *Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008)). "Generally, discovery is only limited when 'sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant' or privileged." *Florence v. New York State Dep't of Env't Conservation*, 2024 WL 1116286, at *3 (N.D.N.Y. Mar. 14, 2024) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004)).

6

## IV.    ARGUMENT

### A.    Inpria's Response to Interrogatory No. 1 is Deficient.

Inpria's partial response to Interrogatory No. 1 is incomplete, evasive, and must be corrected in multiple respects.

*First*, Inpria has not answered as to all Research Project Reports that it received during the course of the Research Projects. SUNY RF knows this because SUNY RF shared far more Reports with Inpria than are identified in even its most recently supplemented response (and indeed, Inpria's own document production in this case demonstrates that Inpria maintains to this day far more Reports than it has identified in its operative response).

Nor can there be any dispute about which Research Project Reports the interrogatory concerns, as SUNY RF expressly defined that term to mean "those 'Reports' referenced in the Research Agreements that SUNY RF provided to Inpria as specified in Exhibits A of the Research Agreements, as well as all Scopes of Work, Statements of Works, Invention Disclosure Reports (including all PRIOR PROJECT IP), Patent Applications, Monthly Reports, Monthly Updates, Final Reports, Final Updates, Plans, and PowerPoint presentations provided to Inpria by SUNY RF and/or any omitted inventor during the Research Projects." Ex. 1 at 4.

Inpria never objected to that term or its definition. Having failed to make any such objection, it was waived by Inpria last summer, and there is no good cause to excuse that waiver. *See Jones v. Goord*, 2007 WL 4377784, at *2 (N.D.N.Y. Dec. 12, 2007) ("Rule 33 clearly states that 'any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

Yet, despite this clear and reasonable definition, Inpria has unilaterally, and improperly, limited its investigation and answer to a limited number of "slide presentations." *See generally* Ex. 2. That is insufficient for two reasons. For one, Inpria only responds as to 26 of those "slide

7

presentations" even though many multiples of such presentations were provided to Inpria during the 4+ years of the Projects, as demonstrated by Inpria's own document productions in this case. Inpria's response provides no explanation for why Inpria's response is so limited or why it has not answered as to all of the other slide presentations that it received from Dr. Brainard and his team of researchers.

But additionally, Inpria's current response also only covers *one* type of Report requested by the interrogatory and strategically omits all of the other types of Reports that SUNY RF expressly inquired about. There is no valid basis for such omissions, which are also highly prejudicial to SUNY RF prosecuting its claims. To take but one glaring and very important omission, Inpria's response nowhere mentions any of the "Invention Disclosure Reports (including all PRIOR PROJECT IP)" that Inpria received during the Research Projects. The omission is inexcusable—and, indeed, highly suspect—given the prominence of those disclosures to Inpria to SUNY RF's claims (and Inpria's one-time denials that it had ever received such reports).

After all, Inpria's own document production includes ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ Ex. 3. And subsequent emails ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ Ex. 4. Not only does Inpria's response not discuss these or the other Research Project Reports that Inpria received *at all*, but Inpria also does not identify "the

group" with whom they were shared.

Given that, there's no reason for Inpria's response to not identify which individuals at Inpria maintained, reviewed, accessed, or had access to Dr. Brainard's Invention Disclosure Reports. Those Invention Disclosure Reports documented exactly the technology at issue in this case, metallo-organic photoresists, and, among other things, Dr. Brainard's prior research involving tin. SUNY RF must be told who had access or did not have access to these Invention Disclosure Reports, in order to question Inpria's witnesses in depositions and at trial about what they learned from the Invention Disclosure Reports, any subsequent steps they took after reviewing the Invention Disclosure Reports, and how the information in the Invention Disclosure Reports is similar to Inpria's claimed inventions in the Challenged Patents.

*Second*, even as to the limited number of Reports included in Inpria's most recently supplemented response, Inpria continues to obfuscate as to which Project participants "received, maintained, reviewed, accessed, and/or had access to" which Reports "in either hard copy or electronic form." This is the most important part of this interrogatory because, although SUNY RF may well know which Reports it sent to certain Inpria participants at various times, SUNY RF is not and has never been privy to who at Inpria received those Reports, maintained those Reports, reviewed those Reports, accessed those Reports, or simply had access to those Reports.

SUNY RF and the jury are entitled to know that information because, again, Inpria's apparent defense to SUNY RF's claims is that, notwithstanding their admitted participation in the Research Projects, Inpria's participants supposedly independently conceived of the Challenged Patents and developed Inpria's commercial products without any knowledge of or reliance on the MORE Research Project Reports that were shared with Inpria prior to or during the Research Projects. But Inpria does not want to provide such information in a verified interrogatory response

9

precisely because it will show, for example, that one or more of Inpria's supposed inventors received the idea for that invention from a Research Project Report *prior to* when Inpria claims to have invented that concept or secretly sought to patent it. Inpria, of course, may freely try to convince the jury that the two facts are not connected, or are merely coincidental—but Inpria is not permitted to shield such evidence from discovery. Such information is directly relevant to how, when, and who at Inpria "secretly" incorporated SUNY RF's intellectual property and implemented that intellectual property in Inpria's "commercial products and methods and patent applications." *Rsch. Found.*, 2025 WL 472680 at *4.

Rather than responding as to each participant it identifies, for each Report received by Inpria, and for each method through which the participant may have obtained SUNY RF's MORE research, Inpria obfuscates. It first responds that "*one or more* persons identified below received and had access to *one or more* of the following documents, which *may* have related to the Research Projects:" Ex. 2 at 22. As the emphases makes clear, this is a nonanswer: SUNY RF already knows these individuals have obtained the documents and that the relate to the Research Projects—indeed, it strongly believes that all of them actually received and reviewed them—but Inpria does not explain which participants, have which level of knowledge, of which Reports. Even more confusing, Inpria then responds as to a limited set of documents and identifies only a subset of the individuals who Inpria says "upon information and belief" "had access to this presentation." *See, e.g.*, *id.* Although that is relevant information, it is incomplete. That certain of these individuals had access to certain of these Reports does not state whether they were in fact accessed, reviewed, maintained, or received by those same individuals. But it also doesn't provide an answer one way or another as to any of the other participants. Inpria must answer this important part of this interrogatory completely, based on a reasonable investigation.

10

*Third*, Inpria's response is also incomplete because it does not explain the respective duties, responsibilities, and/or involvement in the Research Projects of the ten Inpria employees and affiliates it has identified. In fact, it is not even clear that these are all the participants because Inpria's answer instead provides a list of individuals who "reciev[ed] and attend[ed] at least one presentation given by Dr. Robert Brainard and/or his associates regarding the Research Projects," which is deliberately vague. Ex. 2 at 21. Receiving and attending a presentation given by Dr. Brainard about the Research Projects does not render someone a participant in the projects. This ambiguity underscores the need for Inpria to respond in full as to the duties, responsibilities, and involvement of "all persons at Inpria who participated in the Research Projects."

To be sure, Inpria's supplemental response adds a single narrative example for one person, Stephen Meyers, and adds two sentences on Andrew Grenville's involvement. But that shows that Inpria knows how to answer the interrogatory for all other "person at Inpria who participated in the Research Projects." The response is incomplete as to all such participants, and silent on what these Inpria participants did, how they were involved in the Research Projects from the Inpria side, and their responsibilities related to working with SUNY RF and Dr. Brainard. Like above, this information is key to SUNY RF's eventual depositions and cross-examinations of Inpria's fact witnesses and their knowledge and involvement, or potential knowledge or involvement, in Inpria's wrongful exploitation of SUNY RF's intellectual property. If Inpria has nothing to identify for these individuals, or contends they had no roles, responsibility, or involvement, Inpria also must say that, so SUNY RF can either cross examine the witnesses on prior inconsistent statements or pursue alternative witnesses for depositions and trial. In either case, Inpria must answer the interrogatory in full.

11

**B.      SUNY RF's Contention Interrogatories Are Relevant and Timely, and Defendants' Objections Are Meritless.**

Interrogatory No. 1 is a standard, relevant, and non-burdensome interrogatory. At this stage of the case, Inpria must provide a fulsome answer, especially because the information needed to answer is within Inpria's possession, custody, and control.

Inpria's objections are meritless. None of the words or phrases used in the Interrogatory are vague or ambiguous in context. The time frame of the Interrogatory is self-referential; it is the timeframe of the Research Projects that SUNY RF and Inpria entered into, which have defined start and end dates. The request is not overly broad. It targets relevant, foundational information, that is solely within Inpria's possession—who at Inpria was involved in the Research Projects, what their duties and involvement was, what Research Project Reports they obtained, and the methods through which they obtained such research. Nor is this a compound interrogatory, and even if it were, Defendants have set an extremely high bar for what may be considered a "compound" interrogatory in this litigation, sometimes serving interrogatories with no fewer than *ten* separate subparts far less related and more disparate than the subparts presented here.

This information is highly relevant. Who at Inpria had access to SUNY RF's information contained in the Research Project Reports, and their role and involvement in the Research Projects, goes directly to how Inpria was able to exploit SUNY RF's intellectual property in Inpria's unlicensed commercial products and separately proves collaboration, if not definition and copying, between Inpria's named inventors and SUNY RF's omitted inventors. An interrogatory that asks Inpria to identify who had access to SUNY RF's intellectual property, and their role in the contract involving that intellectual property, could not be more relevant to the case. And if Inpria does not identify an individual or contends that a specific individual had no involvement or access to SUNY RF's intellectual property, that is still relevant because it allows SUNY RF to probe any prior

12

inconsistent statements by that person, or remove them entirely from SUNY RF's deposition or trial witness list. SUNY RF is entitled to discover this information during fact discovery and prior to deposing Inpria's witnesses (and indeed, selecting which witnesses to depose).

And although Inpria previously objected that discovery was just beginning, that is no longer true or a valid basis to avoid answering this interrogatory. Documents productions evidencing the Research Project Reports at issue were supposed to have been completed more than a month ago, and depositions are scheduled to begin in a few short weeks. Time is of the essence.

## V.    CONCLUSION

For the foregoing reasons, this Court should order Inpria to provide a complete response to all parts of Interrogatory No. 1, based on a reasonable investigation proportional to the needs of this case, and to be verified under oath by a fact witnesses with knowledge, within 7 days.

Dated: March 11, 2026.                    Respectfully submitted,

*/s/        John Priddy*
Andrew R. Safranko, Esq.
Lilly G. Killar
LAMARCHE SAFRANKO LAW PLLC
Bar Roll 510803
987 New Loudon Road
Cohoes, New York 12047
asafranko@LSLawNY.com
lkillar@LSLawNY.com

Justin A. Nelson (*pro hac vice*)
Jonathan J. Ross (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: 713-651-9366
Facsimile: 713-654-6666
jnelson@susmangodfrey.com
jross@susmangodfrey.com

John Schiltz (*pro hac vice*)

13

Eleanor Runde (*pro hac vice*)
Benjamin Manne (*pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: 206-516-3880
Facsimile: 206-516-3883
jschiltz@susmangodfrey.com
erunde@susmangodfrey.com
bmanne@susmangodfrey.com

John Priddy (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: 212-336-8330
Facsimile: 212-336-8340
jpriddy@susmangodfrey.com

Attorneys for SUNY RF

14