**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE RESEARCH FOUNDATION FOR THE STATE UNIVERSITY OF NEW YORK, <br><br> Plaintiff, <br><br> v. <br><br> INPRIA CORPORATION and JSR CORPORATION, <br><br> Defendants. | Civil Action No. 1:24-cv-120 (BKS/ML) |

**DEFENDANTS INPRIA CORPORATION AND**
**JSR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR RENEWED MOTION**
**TO COMPEL A SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

PAUL HASTINGS LLP
200 Park Avenue
New York, NY 11016

PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036

PAUL HASTINGS LLP
1920 Main Street, Suite 400
Irvine, CA 92614

PAUL HASTINGS LLP
4655 Executive Drive, Suite 350
San Diego, California 92121

HANCOCK ESTABROOK, LLP
AXA Tower I
100 Madison Street
Syracuse, NY 13202

*Counsel to Defendants*
*Inpria Corporation and JSR Corporation*

# TABLE OF CONTENTS

I.     BACKGROUND ................................................................................................1

    A.     The Alleged Acts Giving Rise to This Action.........................................1
    B.     Plaintiff's Failure to Respond Properly to Defendants' Interrogatories.................3
    C.     The Court Orders Plaintiff to Supplement Its Interrogatory Response ..................4
    D.     Plaintiff's Failure to Comply with the Court's Order ..........................................6
    E.     Plaintiff Still Fails to Provide Its Product-Related Contentions ...........................8

II.    LEGAL STANDARD......................................................................................12

III.   ARGUMENT .................................................................................................13

    A.     Plaintiff Should Be Compelled to Identify Any
          Allegedly Breaching Products with Particularity ..............................................13
    B.     Plaintiff Should Be Compelled to Provide the Basis for Any
          Contention That Any Product Breaches the Research Agreement(s)....................14
    C.     Plaintiff Should Be Compelled to Map Allegedly
          Breaching Products to the Challenged Patent Claims.......................................16

IV.    CONCLUSION ..............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kodak Graphic Commc'ns Canada Co. v. E.I. du Pont de Nemours & Co.*,
No. 08-CV-6553T, 2012 WL 413994 (W.D.N.Y. Feb. 8, 2012)...........................................12

*In re Savitt/Adler Litig.*,
176 F.R.D. 44 (N.D.N.Y. 1997) ......................................................................................13

*Trueman v. N.Y. State Canal Corp.*,
No. 1:09-CV-049, 2010 U.S. Dist. LEXIS 16430 (N.D.N.Y. Feb. 24, 2010) .......................13

*Xinuos, Inc. v. IBM Corp.*,
No. 22-CV-097772025, 2025 U.S. Dist. LEXIS 36883 (S.D.N.Y. Feb. 28,
2025) ......................................................................................................................13

**Rules**

Fed. R. Civ. P. 26.............................................................................................................8

Fed. R. Civ. P. 33(a)(2) ..................................................................................................12

Fed. R. Civ. P. 37(b)(2)...................................................................................................21

N.D.N.Y. L.R. 60.1 .........................................................................................................19

Despite this Court's order to supplement Interrogatory No. 2 as requested by Defendants, Plaintiff's responses remain woefully deficient in several respects. Plaintiff still fails to sufficiently identify what, if any, products allegedly use any PRIOR PROJECT IP, FOUNDATION Inventions, and/or JOINT IP in breach of the Research Agreements and the basis. And despite asserting that Defendants' products breach the Research Agreements because they allegedly practice the Challenged Patents, Plaintiff fails to map any products to any claims. It is now five months after the Court's ordered deadline for Plaintiff to supplement Interrogatory No. 2, three months since Defendants finished producing product information, and just over a week before the close of fact discovery. Plaintiff's failure to timely provide its breach of contract contentions with respect to Inpria's products has significantly prejudiced Defendants' ability to prepare for fact depositions and forthcoming expert discovery. Defendants cannot wait any longer as Plaintiff makes vague promises to further supplement without guaranteeing it will fully address any of the issues that Defendants have been raising since September.

For at least the reasons set forth in this memorandum, Defendants respectfully request that their renewed motion to compel a supplemental response to Interrogatory No. 2 be granted.

## I. BACKGROUND

### A. The Alleged Acts Giving Rise to This Action

This action relates to groundbreaking technology that Inpria developed and for which it was awarded 26 patents. The technology at issue generally relates to a novel method of creating circuitry patterns on computer chips with a special type of photoresist, *i.e.*, a light- or radiation-sensitive material that is placed over the semiconductor wafer. Inpria's scientists were among the first to develop photoresists with metal components, which allowed for the use of extreme ultraviolet ("EUV") light to create such patterns. Moreover, Inpria's pioneering work

1

demonstrated the great potential of metal-based photoresists and motivated Plaintiff's own investigation into the use of metal-based photoresists.

Despite being aware of Inpria's technology for years, Plaintiff waited in silence until filing a Complaint on January 25, 2024—conveniently after JSR acquired Inpria for $514 million.  (D.I. 1.)  On May 6, 2024, Plaintiff filed an Amended Complaint alleging that its scientists, and not Defendants' scientists, were the sole inventors of the Challenged Patents, but provided only meager support for this audacious proclamation of inventorship.  (*See* D.I. 86.)  The Amended Complaint also includes breach of contract claims based on alleged activities relating to research agreements that Plaintiff and Inpria had signed in 2015 and 2017.  (*See* D.I. 86.)  Plaintiff alleged, *inter alia*, that Defendants used and continue to use what the research agreements refer to as "PRIOR PROJECT IP," "FOUNDATION Inventions," and/or "JOINT IP" in violation of the agreements.  As part of those allegations, Plaintiff asserted that Defendants' products practice the technology claimed in the Challenged Patents, on which its scientists were supposedly inventors.  (*See, e.g.*, D.I. 86, ¶ 487.)  However, Plaintiff never identified any particular product that practiced any particular claim of a Challenged Patent or any particular product that otherwise used any particular PRIOR PROJECT IP, FOUNDATION Inventions, or JOINT IP.  Instead, Plaintiff only generally asserted that Defendants used its supposed intellectual property for commercial purposes in their products and in applications resulting in the Challenged Patents.

On June 3, 2024, Defendants filed their respective Second Amended Answer denying Plaintiff's allegations.  (D.I. 94 and 95.)  Plaintiff's allegations fly in the face of reason and common sense.  Inpria was, and continues to be, the true innovator, having filed patent applications on its technology as early as 2010, which is long before Inpria started working with

Plaintiff on discrete research projects or entered into any contractual agreement.  Inpria's products use its own, independently developed technology—not Plaintiff's.

**B.** **Plaintiff's Failure to Respond Properly to Defendants' Interrogatories**

On May 5, 2025, Defendants served their first set of interrogatories.  Among them is Interrogatory No. 2, which generally seeks Plaintiff's contentions regarding its claims of breach of contract "on a patent-claim-by-patent-claim basis."  (Ex. 2 at 25.)  On June 30, 2025, Plaintiff served its response to this interrogatory, which was amended on July 10, 2025.  On July 25, 2025, Defendants sent a letter identifying deficiencies in Plaintiff's responses to their interrogatories.  (D.I. 203-5.)  The parties held the first of many meet-and-confers on September 10, 2025.

On September 15, Defendants wrote to Plaintiff requesting that it supplement its responses to, *inter alia*, Interrogatory No. 2 to identify, "on a patent-claim-by-patent-claim basis" as requested, what intellectual property was allegedly used improperly, resulting in the breach.  (*Id.*)  On September 22, Plaintiff's counsel refused to supplement on a "claim-by-claim basis" as requested but agreed to "supplement to further explain and clarify [their] theories and provide additional facts and information . . . including the factual predicates" for Plaintiff's breach of contract claims by October 24.  (*Id.*)  Defendants maintained that a claim-by-claim response was necessary, but nonetheless waited to see Plaintiff's supplemental response before determining whether further action was necessary.

After reviewing Plaintiff's second amended interrogatory responses, on November 13, Defendants sent Plaintiff emails explaining several deficiencies in Plaintiff's second amended interrogatory responses, including for Interrogatory No. 2.  (D.I. 203-8 at 6-7.)  On November 24, the parties had a second meet-and-confer concerning Plaintiff's responses to interrogatories.  Defendants explained that Plaintiff's latest response to Interrogatory No. 2 failed to specifically

identify what it was contending constituted a breach of which contractual provisions and why. On December 5, Plaintiff informed Defendants that it did not intend to supplement its responses to contention Interrogatory No. 2 at that time.  (*Id*. at 1-2.)

On December 8, this Court held a status conference to discuss, *inter alia*, Plaintiff's deficient response to Defendants' Interrogatory No. 2.  The Court stated that the parties had until December 24 to either resolve their discovery differences or file a motion to compel.  (Dec. 8 Hr'g Tr. at 72:1-18, 77:23-78:6.)  The Court also informed the parties that the parties act at their "own peril if [they] haven't produced to the other side adequate interrogatory responses or document production," *id.* at 75:19-21.

## C.     The Court Orders Plaintiff to Supplement Its Interrogatory Response

Because the parties were unable to resolve their dispute, on December 24, 2025, Defendants moved to compel a complete response to, *inter alia*, Defendants' Interrogatory No. 2. (D.I. 203.)  In their Memorandum in support (D.I. 203-13, "Mem."), Defendants explained precisely how and why Plaintiff's response at that time was deficient.  Defendants argued that "Plaintiff's response is deficient at least because it fails to identify any specific Challenged Patent claims or Inpria products it contends is PRIOR PROJECT IP, a FOUNDATION Invention, or JOINT IP and why they allegedly qualify as such under the research agreements." (Mem. at 2-3; *see also id.* at 21-22 (similar).)  Defendants reiterated that it was "insufficient to group all Challenged Patent and Inpria products together and state that they, collectively, either constitute PRIOR PROJECT IP or FOUNDATION Inventions (or, alternatively, JOINT IP)." (*Id*. at 22.)  Defendants pointed out that although Plaintiff's incorporated response to Interrogatory No. 1 may clarify some issues with respect to alleged breach by the Challenged Patents, it "does not at all address Inpria's products."  (*Id*. at 23.)  Defendants emphasized that "[o]n a patent claim-by-patent claim basis, Plaintiff needs to explain what it contends constitutes

its allegedly misused IP and how—the bare minimum for its breach of contract claims." (*Id*. at 22.)

At a hearing on January 6, 2026, this Court granted Defendants' motion. Specifically, the Court "grant[ed] that motion in *all respects*. And I do want to underline all respects." (Jan. 6, 2026 Hr'g Tr. at 102:12-14 (emphasis added).) Plaintiff was ordered "to supplement its Response to Interrogatories No. 1 and No. 2 as described in defendants' motion." (*Id*. at 102:25-103:2.) The Court reiterated that, "to be clear," Plaintiff must supplement "in the manner that the defendants have outlined in their motion" because the Court "agree[d] with the defendants in every capacity that that needs to be done." (*Id*. at 103:19-21.)

The Court emphasized that this discovery was appropriate at that time because it was "proportional to the needs of this specific case," "highly relevant to the claims that have been asserted . . . by the plaintiff and defenses that the defendants are entertaining," "not overly burdensome," and "necessary at this juncture of the case." (*Id.* at 103:22-104:20.) In particular, the Court noted that Defendants should not need to speculate as to what Plaintiff's theories and arguments are. (*See id.* at 105:1-18.) The Court found it was not appropriate for Plaintiff to say, "Judge, it's all in there in this big pot of soup and it's all floating around and defendants can go and find it." (*Id.* at 105:1-4.) Rather, the Court found that "[t]he plaintiff needs to articulate where in that big pot of soup are all the letters and to put them in order so that the defendant doesn't have to guess." (*Id.* at 105:5-7.) Simply put, "the defendants shouldn't have to guess and they shouldn't have to wait until pretrial conferences to find out what arguments the plaintiff is going to make to a potential jury." (*Id*. at 105:15-18.)

The Court further cemented this ruling in a text order, confirming that "the Court finds persuasive and adopts the arguments set forth by Defendants," and that Defendants' motion "is

GRANTED in all respects." (D.I. 210.)

### D. Plaintiff's Failure to Comply with the Court's Order

The day after the hearing, Plaintiff reached out to Defendants requesting two additional weeks to provide its Court-ordered supplementation. (D.I. 251-2 at 2.) Defendants explained that they "need[ed] the information in the[] so-ordered interrogatories for numerous reasons including in connection with the upcoming depositions, and [would] need adequate time to review them in advance." (*Id*. at 2.) However, as a professional courtesy, Defendants agreed not to object to a request for a one-week extension. (*Id*.) On January 23, 2026, Plaintiff moved for an extension until February 9 (D.I. 216), which the Court granted (D.I. 217).

On February 9, Plaintiff served its Fourth Amended Responses and Objections to Defendants' First Set of Interrogatories, which included a supplemental response to Defendants' Interrogatory No. 2. But Plaintiff's response failed to identify any products that allegedly breach the Research Agreements or, on a claim-by-claim basis, any products that allegedly practice the claims of the Challenged Patents in breach of the Research Agreements and the basis. Indeed, despite including a new chart listing each Challenged Patent with a column for "Used in Defendants' Commercial Product(s)," nearly every box in that column was blank. (Ex. 2 at 39-51.) And even for the mere four patents where Plaintiff did provide information in that column, it was only at a high level and did not provide any explanation for Plaintiff's positions or exemplary evidence. (*Id*.)

Defendants promptly raised these issues with Plaintiff just days later on February 11 and queried whether Plaintiff would further supplement its responses. (D.I. 251-4 at 11.) Plaintiff replied a week later that it did not believe any of its responses were deficient but failed to address the specific issues raised by Defendants. (*Id*. at 9-10.) Defendants wrote back the same day, providing further clarification on their positions and again asking Plaintiff to supplement. (*Id*. at

8-9.) The parties met and conferred regarding these interrogatories on February 24. Defendants explained that Plaintiff's supplemental responses still failed to provide adequate notice of its positions. While the parties continued to discuss certain other deficiencies, they agreed to table the products issue until Plaintiff's own discovery demands regarding product information were addressed, with the understanding that Plaintiff would promptly supplement thereafter. (*Id.* at 5.) Although Defendants disagreed that their production was lacking in any way, Defendants wished to minimize the number of disputes raised with the Court and continued to produce additional product information at Plaintiff's request in February and March.

After Defendants' repeated insistence, Plaintiff finally supplemented its responses to Interrogatory No. 2 on March 6. Unfortunately, its response failed to fully correct the deficiencies identified by Defendants. Defendants were forced to file a renewed motion to compel (D.I. 251). In that motion, Defendants explained that the dispute over Plaintiff's breach of contracts contentions with respect to Inpria's products was not yet ripe for resolution:

> Plaintiff's present response to Interrogatory No. 2 likewise fails to adequately address Plaintiff's breach of contract contentions with respect to Inpria's products, but Defendants understand that Plaintiffs intend to promptly supplement with that information based on recent discovery and it is thus premature to address this issue in this motion. Defendants reserve all rights if Plaintiff's supplemental response on this issue is likewise lacking.

(D.I. 251 at 2 n.1.) Defendants needed to ensure their rights were preserved if Plaintiff's later supplement(s) regarding their products were not sufficient. That same day, Plaintiff filed its own motion to compel product-by-product information. Even after Plaintiff filed its motion, Defendants still attempted to provide the information Plaintiff was seeking and further produced additional product data. They made their final production of product information on April 1, 2026.

At the March 26 hearing to address this motion to compel, the Court encouraged the parties to continue and meet and confer to resolve the disputes over both Defendants' renewed motion to compel and Plaintiff's motion to compel product-by-product information. (Mar. 26 Hr'g Tr. at 21:24-24:22, 32:16-34:20, 141:8-144:25.) In accordance with the Court's instruction, the parties continued to confer and were able to reach a compromise regarding the still-pending motion issues, including Defendants' production of product-by-product information. The parties jointly notified the Court of their resolution on April 9 (D.I. 278). (*See also* D.I. 279 (denying as moot the remaining motions).)

### E.      Plaintiff Still Fails to Provide Its Product-Related Contentions

Following the resolution of Plaintiff's request for additional product information, Defendants reached out to Plaintiff on April 15 requesting that it supplement its response to Interrogatory No. 2 to provide its breach of contract contentions regarding Inpria's products by April 29—a full two weeks from the request and three weeks after the parties had resolved their other discovery disputes. (Ex. 1 at 17.) Plaintiff did not reply until April 20, refusing to supplement by the proposed date, and instead vaguely promising to "supplement in accordance with [its] obligations under the Federal Rules." (*Id.* at 16-17.) Defendants replied the same day, reiterating that Fed. R. Civ. P. 26 requires a party to supplement "in a timely manner" and pointing out that Plaintiff long-had the information it supposedly needed to supplement. (*Id.* at 16.) Defendants asked when they could expect Plaintiff's supplement if not by April 29. (*Id.*) Plaintiff did not reply or serve a supplemental interrogatory response. On May 5, Defendants reached back out again, asking Plaintiff to confirm it would supplement its response by the end of that week. (*Id.* at 15.) Plaintiff again did not reply.

The following week, on May 11, Plaintiff finally served a supplemental response to Interrogatory No. 2 addressing Defendants' products—but only in the most cursory sense.

Plaintiff's supplemental response failed to identify any particular product, by product number or otherwise. The response likewise failed to specify what product, if any, Plaintiff contends allegedly misuses what supposed FOUNDATION Invention, PRIOR PROJECT IP, or JOINT IP. Nor did the response identify any particular claim of any particular Challenged Patent practiced by any particular product. As a result, despite the Court's January 6, 2026 Order, and the approaching close of fact discovery, Defendants still lacked notice of the factual bases for Plaintiff's breach theories relating to Inpria's products. (*See* D.I. 210.)

Defendants reached out on May 13, 2026, notifying Plaintiff of those deficiencies and requesting that Plaintiff confirm it would promptly supplement or provide its availability to meet and confer. (Ex. 1 at 14-15.) Plaintiff replied on May 14, indicating it would supplement "as needed," but failed to provide a timeline for its supplement, what any supplement would entail, or availability for a meet and confer. (*Id*. at 14.) Defendants reiterated that they could not wait indefinitely and requested supplementation by May 20, 2026. (*Id*. at 13-14.) Plaintiff refused to supplement by that date but requested Defendants' availability for a meet and confer to "ensure that [the parties] are not talking past each other." (*Id*. at12- 13.) Defendants replied with their availability to meet and confer. (*Id*. at 12.) Plaintiff did not reply with its own availability or send a calendar invitation, and instead replied a few days later indicating it "intend[ed] to further supplement this interrogatory response by Friday." (*Id*. at 11-12.)

On Friday, May 22, Plaintiff served another supplemental response to Interrogatory No. 2. On Tuesday, May 26, Plaintiff indicated that it planned to supplement Interrogatory No. 2 again later that week. (Ex. 3 at 1-3.) Given the upcoming deadline for motions to compel (*see* D.I. 302), Defendants reached out again on May 27, explaining that Plaintiff's May 22 supplemental response still failed to provide its contentions for how any products allegedly

9

practice any claim of any Challenged Patent or otherwise identify how any product allegedly breaches the Research Agreements. (Ex. 1 at 11.) Defendants noted that they understood Plaintiff intended to supplement again later that week, and asked Plaintiff to confirm that its supplement would remedy the identified issues or to let Defendants know when Plaintiff was available to meet and confer. (*Id.*)

The parties met and conferred on Thursday, May 28. Defendants repeated their complaints that Plaintiff's response, even as supplemented, still failed to provide notice of Plaintiff's breach of contract contentions with respect to Inpria's products. Plaintiff asserted that it need not show any product practiced any claim of any Challenged Patent to prove its breach of contract claims. Defendants explained that, although they did not disagree, it appeared from Plaintiff's response that it *was* contending that products practiced claims of Challenged Patents as the basis for its breach of contract contentions. Defendants maintained that if Plaintiff was going to make that contention, it must provide the requisite information. If Plaintiff was not going to contend that any product practiced any claim of any Challenged Patent, then it needed to amend its response and state so. And even if Plaintiff was only going to contend that any product practiced a limitation or element in alleged breach of the Research Agreements, rather than an entire patent claim, it must still identify those products and explain how they meet that limitation or element. Plaintiff asked Defendants to wait and review its forthcoming supplemental response, and then the parties could discuss further.

On Friday, May 29 at 9:26 PM, Plaintiff served another supplemental response to Interrogatory No. 2. On Monday, June 1, Defendants reached out to Plaintiff, indicating that it was still reviewing the supplemental response, but it appeared that their previously raised issues remained. (Ex. 1 at 10.) Because the supplement was only just served and there was need for

10

further conferral, Defendants requested Plaintiff's consent to a motion for an extension to file any motion to compel. (*Id*.) Plaintiff declined to provide its consent and indicated that it "intend[ed] to continue supplementing, including next week, on or shortly after [June 8]." (*Id*. at 9-10.) Plaintiff indicated, however, it was "amenable to continuing to meet and confer" about Defendants' specific complaints. (*Id*. at 9.) Defendants' motion for a one-week extension was granted (D.I. 314), and Defendants replied to Plaintiff Tuesday morning, reiterating their position and asking for its availability for a meet and confer that day or the next. (*Id*. at 8-9.) Plaintiff did not reply. Defendants followed up again the next day, on June 3, including their availability for a meet and confer that afternoon. (*Id*. at 8.) Despite sending other emails, Plaintiff, again, did not reply to Defendants' request to meet and confer. Defendants followed up once more, providing their own availability for a meet and confer that day and requesting a time that would work for Plaintiff. (*Id*. at 7.)

Rather than provide its availability for a meet and confer, Plaintiff replied maintaining that it "intend[ed] to supplement again early next week" and complaining that Defendants had supposedly raised "new" deficiencies. (Ex. 1 at 6-7.) Defendants promptly responded later that day, explaining that they were not raising any new issues, but rather maintained that there were long-standing deficiencies that had yet to be rectified in any supplemental response. (*Id*. at 4-6.) Defendants stated that Plaintiff must supplement to provide the missing information or be precluded from relying on it, and again requested Plaintiff's availability for a meet and confer. (*Id*. at 4.) Given the upcoming deposition of Dr. Brainard, impending close of fact discovery, *and* already months-long delay, Defendants could not continue to wait.

Plaintiff finally agreed to meet and confer at 4:30 PM on Thursday, June 4. (Ex. 1 at 3-4.) Defendants reiterated their positions and asked if Plaintiff could identify either where in its

present response it believed the requested information appeared or, if not present, whether the requested information would be part of Plaintiff's forthcoming supplement. Plaintiff confirmed that its forthcoming supplemental response intended to (1) identify products in alleged breach with particularity, and (2) explain how each identified product (or product group) breaches the Research Agreement(s) with exemplary citations to evidence. (*See id.* at 1-2.) However, Plaintiff insisted its present response already disclosed what products it alleged practiced what claims of what Challenged Patents. When asked to identify where this disclosure was made, Plaintiff pointed to various disconnected sentences in different supplements, none of which referenced any Challenged Patent claim and product together. Defendants explained that it could not have possibly been expected to connect those dots and would not speculate at Plaintiff's contentions. Plaintiff stated that it would consider Defendants' position and whether it would supplement addressing this issue but did not make a firm commitment. Regardless, Plaintiff stated that it could not make any supplement before the following week, despite Defendants' impending deadline to move to compel—already once extended. (D.I. 314.) Defendants explained that they had already been prejudiced, could not continue to wait any longer, and must act to preserve their rights. (*See* Ex. 1 at 1.) Defendants had no choice but to file the present motion.

## II.     LEGAL STANDARD

There is no dispute that contention interrogatories, which request the application of fact to law, are valid and "a perfectly acceptable form of discovery." *Kodak Graphic Commc'ns Canada Co. v. E.I. du Pont de Nemours & Co.*, No. 08-CV-6553T, 2012 WL 413994, at *3 (W.D.N.Y. Feb. 8, 2012) (citation omitted). Under Federal Rule 33(a)(2): "An interrogatory is not objectionable merely because it asks for an opinion or contention . . . ." Fed. R. Civ. P. 33(a)(2). A sufficient interrogatory response "must be a complete response to the interrogatory,

specific as possible and not evasive.  The answer is supposed to provide more than an idea of what the case or defense is all about." *Trueman v. N.Y. State Canal Corp.*, No. 1:09-CV-049, 2010 U.S. Dist. LEXIS 16430, at *8 (N.D.N.Y. Feb. 24, 2010) (citing *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997)).  Indeed, "an inquiring party is entitled to know his adversary's theory of the case," *id*. at *9-10.  And parties may not rely on future expert testimony to avoid complete interrogatory responses.  *See, e.g.*, *Xinuos, Inc. v. IBM Corp.*, No. 22-CV-097772025, 2025 U.S. Dist. LEXIS 36883, at *4 (S.D.N.Y. Feb. 28, 2025) ("That expert reports may later refine the analysis does not excuse Plaintiff from disclosing its present knowledge.").

## III.  ARGUMENT

Plaintiff should be compelled to (A) identify any Inpria products it alleges breach the Research Agreements, (B) explain how each identified product allegedly breaches the Research Agreements, and (C) for any product it contends practices a claim or limitation of a Challenged Patent, provide a mapping of that product to that claim or limitation.  Plaintiff has indicated that its forthcoming response intends to provide (A) and (B), but because Plaintiffs did not timely provide such information and the close of fact discovery is imminent, they are included here for completeness and preservation of rights.  If Plaintiff provides this information in advance of the June 24 hearing, Defendants will notify the Court and withdraw any relevant portion(s) of their motion.  Defendants, however, maintain that they have been prejudiced by Plaintiff's substantial delay in providing such required information.  Regarding (C), Plaintiff has not indicated to Defendants whether it intends to provide this mapping in a forthcoming supplement, and Defendants require the Court's intervention to enforce its prior order compelling such response.

### A.  Plaintiff Should Be Compelled to Identify Any Allegedly Breaching Products with Particularity

Defendants' first request is simple: Plaintiff should be compelled to identify any products

it is alleging breach the Research Agreements.  Plaintiff made sweeping allegations that Defendants' products breach various provisions of the Research Agreements in its Amended Complaint in May 2024.  (*See, e.g.*, D.I. 86, ¶¶ 516, 533, 551, 579, 589, 600.)  It repeated those generic allegations in its initial response to Interrogatory No. 2 in June 2025.  (Ex. 2 at 27-32.)  Despite further supplementation on October 29, 2025, February 9, 2026, March 6, 2026, May 11, 2026, and May 22, 2026, it was not until May 29, 2026 that Plaintiff first even *attempted* to identify any particular allegedly breaching product.  Not only was this delay substantially prejudicial, but even in Plaintiff's May 29 response, it still only identifies "examples of specific Inpria/JSR product 'series' and individual exemplary products within those series."  (Ex. 2 at 75.)  Plaintiff cannot simply provide "examples."  Plaintiff must provide Defendants sufficient notice of *every* product it contends breach the Research Agreements.

### B. Plaintiff Should Be Compelled to Provide the Basis for Any Contention That Any Product Breaches the Research Agreement(s)

Next, Plaintiff should be compelled to explain how each identified product (or product group) breaches the Research Agreement(s) with exemplary citations to evidence.  At minimum, this explanation should include what provision of the Research Agreement(s) Plaintiff contends is breached (*i.e.*, the provision corresponding to a claim for relief) and what about the product(s) breaches the Research Agreement(s).  As Defendants explained to Plaintiff, Defendants do not object to Plaintiff identifying a group of products and explaining how a representative product from that group allegedly breaches the Research Agreements.  However, (1) any group of products must be identified with particularity, and (2) all products in a group must allegedly breach the Research Agreements in the same way.  Defendants should not be in a position where they have to guess as to what products are included within a group or whether Plaintiff will later assert that group members breach the Research Agreements in different ways.

Even for the exemplary products and product series Plaintiff identifies in its current response (*see, e.g.*, Ex. 2 at 75-79), it still does not explain how even those exemplary products or product series breach the Research Agreements.  For example, as shown below, Plaintiff's May 29 response identifies the ▮▮▮▮▮ of products and then lists exemplary features it alleges are present in the product series, such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)



As a non-exhaustive illustration, examples of specific Inpria/JSR product "series" and individual exemplary products within those series, that practice relevant claims and patents are below:

**Exemplary Patented Chemistries and Processes in Inpria/JSR Products**

(*Id.*)  However, Plaintiff does not explain whether it is contending the ▮▮▮▮▮▮' alleged inclusion of ▮▮▮▮▮▮▮▮ alone is a breach of the Research Agreements and, if so, what provision and the basis.  Likewise, Plaintiff does not explain whether it is contending the ▮▮▮ ▮▮▮ alleged inclusion of ▮▮▮▮▮▮▮▮ alone is a breach of the Research Agreements and, if so, what provision and the basis.

Similarly, Plaintiff states in its response that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JSR CORP_000095213."  (Ex. 2 at 76.)  But, again, the relevance of this statement is unclear.  Plaintiff does not explain whether

it is contending that ████████████████████████████████████████████ ████████████████████ is a breach of the Research Agreements and, if so, what provision and the basis. Even more egregiously, this statement only references "some" ████ ████ products, leaving Defendants without notice of what products within this group Plaintiff alleges to possess this feature (and, suggesting, that products within the ████████ should not all be grouped together). And these are just a few examples of the vagueness of Plaintiff's contentions.

Defendants do not assert a particular format for Plaintiff's response is necessary. But, for simplicity and ease of resolution, Defendants suggest that a complete response may be provided by the following type of statement or equivalent chart: "Plaintiff contends that [product (or product group)] breaches [§ 9(a), § 9(e), or § 9(h)] of the [2015 and/or 2017] Research Agreement(s) by [possessing or using a particular feature] because such constitutes [PRIOR PROJECT IP, FOUNDATION Invention, or JOINT IP]. [Cite to exemplary supporting evidence]." Even if that formatting proposal is not adopted, at a minimum, the bracketed information should be provided (and has not yet been).

### C. Plaintiff Should Be Compelled to Map Allegedly Breaching Products to the Challenged Patent Claims

Finally, Plaintiff should be compelled to map any product it contends breaches the Research Agreements because it practices a patent, claim, or claim limitation to that patent, claim, or claim limitation. From the filing of its Amended Complaint, Plaintiff has contended that Defendants' products allegedly breach the Research Agreements because they practice the Challenged Patents. (*See, e.g.*, D.I. 86, ¶ 487.) Plaintiff repeated this generic assertion in its initial response to Interrogatory No. 2 (*see, e.g.*, Ex. 2 at 28, 30), and subsequent supplements (*id.* at 38, 39, 45, 48, 51, 57, 59, 62). Despite these statements, when asked to identify what

products allegedly practice what claims, Plaintiff responded on the parties' May 28 meet and confer that it was not necessary to meet its burden. (*See* Ex. 1 at 10.) Defendants explained that while Plaintiff need not have contended that Defendants' products practice any Challenged Patents to prove breach of contract, because Plaintiff *had* made such contention as the basis for its breach of contract claims, it must provide the requisite information. (*See id*.) If Plaintiff was no longer making such a contention, it needs to amend its interrogatory response to say so. (*See id*.)

Rather than amend its response to remove such a contention, Plaintiff doubled down on it. In its May 29 supplemental response, Plaintiff stated that it was providing "examples of specific Inpria/JSR product 'series' and individual exemplary products within those series, that practice relevant claims and patents." (Ex. 2 at 75.) But nowhere in Plaintiff's supplemental response did it identify any Challenged Patent claims practiced by any product. When asked on the parties' June 4 meet and confer about this missing information, Plaintiff no longer contended that it did not need to provide this information but rather asserted that it was already been included in its responses. This new assertion is contradicted by Plaintiff's prior protestations, is not supported by Plaintiff's interrogatory response, and flies in the face of this Court's previous order granting Defendants' motion to compel a patent claim-by-patent claim response.

For the first time on that meet and confer, Plaintiff asserted that Defendants were somehow supposed to connect various passages from different responses, on different pages, that make no reference to each other. Plaintiff provided the following example, asserting that Defendants should have recognized their connection simply because each mentions ███████
█████:



(Ex. 2 at 65.)

As a non-exhaustive illustration, examples of specific Inpria/JSR product "series" and individual exemplary products within those series, that practice relevant claims and patents are below:

**Exemplary Patented Chemistries and Processes in Inpria/JSR Products**

(*Id.* at 75.)  This falls far short of sufficient notice and fails to comply with the Court's previous order.  Defendants requested a patent claim-by-patent claim response (Ex. 2 at 25; Mem. at 3), were granted a patent claim-by-patent claim response (D.I. 210), and should receive a patent claim-by-patent claim response.  (*See, e.g.*, Jan. 6, 2026 Hr'g Tr. at 104:4-5 ("A limitation-by-limitation basis and a claim-by-claim basis is, in fact, necessary at this juncture of this case.").)  Defendants cannot be left to speculate at Plaintiff's contentions through a convoluted web of untethered amendments and supplements.  Plaintiff should, and indeed must, provide a claim-by-claim mapping of any allegedly breaching products.

Nor is this a matter of form over substance, as Plaintiff has suggested.  Rather, it is a matter of providing Defendants adequate notice of Plaintiff's positions.  Indeed, this Court *has already determined*, in deciding Defendants' original motion compel a supplemental response to

this very same interrogatory, that Defendants should not need to speculate as to what Plaintiff's theories and arguments are. (*See id.* at 105:1-18.) It found that:

> The Court is not of the mind that plaintiff should be able to say, Judge, it's all in there in this big pot of soup and it's all floating around and defendants can go and find it. That simply is not going to do it in this case. The plaintiff needs to articulate where in that big pot of soup are all the letters and to put them in order so that the defendant doesn't have to guess.

(*Id.* at 105:1-7.) Simply put, "the defendants shouldn't have to guess and they shouldn't have to wait until pretrial conferences to find out what arguments the plaintiff is going to make to a potential jury." (*Id*. at 105:15-18.) Defendants are entitled to notice of Plaintiff's positions.

Plaintiff has also suggested that providing a response as requested would be overly burdensome. But Defendants are simply asking Plaintiff, the party bearing the burden of proof, to disclose its contentions with sufficient specificity. Plaintiff's response falls well short. If Plaintiff believes providing the requested contentions is unduly burdensome, that burden results from the overly broad and unwieldy allegations (involving over 300 claims for relief and 26 patents) it has chosen to pursue and does not relieve Plaintiff of its disclosure obligations. Regardless, the Court already rejected this proposition in deciding Defendants' original motion to compel. (*See* Jan. 6, 2026 Hr'g Tr. at 104:18-20 ("It is not overly burdensome, as far as the Court can see, for the plaintiff to supplement these interrogatories.")). Plaintiff cannot untimely reraise this objection now. (*See* L.R. 60.1.)

Even if the convoluted format of Plaintiff's present contentions were somehow acceptable, they still fail to provide all necessary information. Whether a product or product group contains a particular feature, *e.g.*, an ██████████ that does not mean it practices any claim of any Challenged Patent. For example, claim 16 of the '924 Patent (referenced in the excerpt above from Ex. 2 at 65) requires, "[t]he radiation sensitive coating of claim 6 wherein

19

hydrolysis of the precursor composition comprises contacting the precursor composition with an organic solvent having a controlled amount of water." Claim 6, in turn, requires, "[t]he radiation sensitive coating of claim 1 wherein the organotin composition is formed through hydrolysis of a precursor composition comprising two or more organotin compounds having different hydrocarbyl ligands." And claim 1 requires, "[a] radiation sensitive coating comprising an organotin composition having a blend of different hydrocarbyl ligands, wherein the organotin composition is represented by the formula $((R \text{ and/or } R')_a R''_b)SnO_{2-((a+b/2)-(w/2))}(OH)_w$, where $0<(a+b)\leq2$ and $0<(a+b+w)<4$, and R, R', R'' are independently hydrocarbyl ligands with 1-31 carbon atoms, wherein R, R', and R'' are different hydrocarbyl ligands." To demonstrate that all ███████ products practice claim 16 of the '924 Patent, or even certain limitations in that claim, Plaintiff must sufficiently explain *how* those products practice the claim. A conclusory allegation that a product includes an ███████████ is insufficient to show how the entire claim or limitations thereof are met.[1]

In sum, Plaintiff's current response fails to specifically identify *any* particular claim of *any* particular Challenged Patent that it contends is practiced by *any* particular product. If Plaintiff is going to contend that a product practices a Challenged Patent, it must provide this information on a patent claim-by-patent claim basis as already ordered.

## IV.   CONCLUSION

For at least the foregoing reasons, Defendants respectfully request this motion be granted. If Plaintiff fails to provide a complete response by a strict, Court-ordered deadline, Plaintiff should be precluded from relying on those products and/or patents, claims, or claim limitations

---

[1] Because claim 16 of the '924 patent depends from claim 6, which in turn depends from claim 1, claim 16 incorporates all the limitations of those claims. 35 U.S.C. § 112(b) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

for its breach of contract claims for relief under Fed. R. Civ. P. 37(b)(2).

Dated: June 8, 2026

OF COUNSEL:

**PAUL HASTINGS LLP**

*/s/ Eric W. Dittmann*
Eric W. Dittmann (705151)
Isaac S. Ashkenazi (*pro hac vice*)
Young J. Park (*pro hac vice*)
Joshua M. Bennett (705152)
Sachiko Taniguchi (705503)
Scott Peachman (*pro hac vice*)
Carl Joseph Minniti III (5595293)
Chinmay Bagwe (*pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
ericdittmann@paulhastings.com
isaacashkenazi@paulhastings.com
youngpark@paulhastings.com
joshuabennett@paulhastings.com
sachikotaniguchi@paulhastings.com
scottpeachman@paulhastings.com
carlminniti@paulhastings.com
chinmaybagwe@paulhastings.com

Naveen Modi (*pro hac vice*)
Phillip W. Citroen (*pro hac vice*)
Joseph E. Palys (pro hac vice)
Stephanie Adamakos (*pro hac vice*)
Cooper B. Lerner (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700
naveenmodi@paulhastings.com
phillipcitroen@paulhastings.com
josephpalys@paulhastings.com
stephanieadamakos@paulhastings.com
cooperlerner@paulhastings.com

Raymond Winters Stockstill (*pro hac vice*)
PAUL HASTINGS LLP
1920 Main Street, Suite 400
Irvine, CA 92614
(714) 668-6204
beaustockstill@paulhastings.com

Jennifer Koh (*pro hac vice*)
PAUL HASTINGS LLP
4655 Executive Drive, Suite 350
San Diego, California 92121
(858) 458-3000
jenniferkoh@paulhastings.com

HANCOCK ESTABROOK, LLP
John G. Powers (508934)
Mary D'Agostino (520301)
James J. O'Shea (516403)
HANCOCK ESTABOOK, LLP
1800 AXA Tower, I, 100 Madison Street
Syracuse, New York 13202
(315) 565-4500
jpowers@hancocklaw.com
mdagostino@hancocklaw.com
joshea@hancocklaw.com

*Counsel for Defendants Inpria
Corporation and JSR Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 8, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Justin A. Nelson (*pro hac vice*)
Johathan Ross (*pro hac vice*)
Larry Y. Liu (*pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: 713-651-9366
Facsimile: 713-654-6666
jnelson@susmangodfrey.com
jross@SusmanGodfrey.com
lliu@susmangodfrey.com

John Schiltz (*pro hac vice*)
Benjamin Manne (*pro hac vice*)
Eleanor Runde (*pro hac vice*)
SUSMAN GODFREY LLP
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: 206-516-3880
Facsimile: 206-516-3883
jschiltz@susmangodfrey.com
bmanne@susmangodfrey.com
erunde@susmangodfrey.com

Samir Doshi (*pro hac vice*)
John Priddy (*pro hac vice*)
SUSMAN GODFREY LLP
One Manhattan West - 50th Floor
New York, NY 10001
212-336-8330
sdoshi@susmangodfrey.com
jpriddy@susmangodfrey.com

Andrew R. Safranko, Esq.
Lily G. Killar
LAMARCHE SAFRANKO LAW PLLC
Bar Roll 510803
987 New Loudon Road
Cohoes, New York 120
asafranko@lslawny.com
lkillar@lslawny.com

*Attorneys for Plaintiff The Research Foundation for The State University of New York*

Dated:  June 8, 2026

PAUL HASTINGS LLP

*/s/ Eric W. Dittmann*
Eric W. Dittmann